## MARSHALL WOOD v. THE STATE.

### No. 4936. Decided November 6, 1918.

**1.—Murder—Charge of Court—Self-defense—Manslaughter.**

Where, upon trial of murder, the issues of manslaughter and self-defense were submitted in a charge of the court, which was not subject to any of the exceptions made thereto, there was no reversible error.

2.—Same—Evidence—Contradicting Witness—Bill of Exceptions.

Where a defendant witness testified that the reputation of deceased was that of a violent and dangerous man, and a State's witness was permitted to testify to derogatory remarks made by said defendant's witness about the deceased, but the bill of exceptions was silent as to the surrounding facts, etc., and it appeared that this testimony was admitted to show the animus of said defendant's witness, there was no reversible error.

3.—Same—Evidence—Animus of Witness—Cross-examination.

Where a State's witness gave testimony as to the animus of a defendant's witness, the defense should have been allowed on cross-examination to show if said defendant's witness had not arrested her, etc., to show her animus toward defendant's witness; however, a refusal to do so was not reversible error in this case.

4.—Same—Evidence—Defendant as a Witness—Cross-examination.

Where defendant testified in his own behalf, it was improper on cross-examination to ask him whether the statement denying that he had used an oath preceding the homicide, if that statement was as true as any of his other testimony; however, the bill of exceptions does not show that defendant answered this question, and there was no reversible error.

5.—Same—Charge of Court—Weight of the Evidence.

Where the State on cross-examination of defendant's main witness brought out testimony which tended to show the bias of witness in favor of defendant, there was no error in the court's refusal to submit a special charge asked by defendant that there was no evidence showing, or tending to show, that said defendant's witness instigated, or was connected with the homicide; as this was the charge on the weight of the evidence.

6.—Same—Jury and Jury Law—Separation of Jury.

Where one of the jurors went to bed in a room below that which was occupied by the jury, and was separated therefrom by a partition and stairway, but had no communication with outsiders and was not outside the building in which the jury was confined, there was no reversible error. Following Cox v. State, 7 Texas Crim. App., 1, and other cases.

7.—Same—Misconduct of Jury—Telephone Conversation—Consent.

Where, upon appeal from a conviction of murder, it appeared from the record that one of the jurors communicated over the telephone with members of his family as to his sick wife, which was done with the permission of the court and the consent of defendant and his counsel, but the persons to whom the juror talked were not used as witnesses to verify his statement, yet no injury resulted therefrom, there was no reversible error under article 748, C. C. P. Distinguishing Early v. State, 51 Texas Crim. Rep., 382.

8.—Same—Misconduct of Jury—Leading Questions—Discretion of Court.

The discretion allowed the trial judge as to the method of ascertaining what occurred in the jury room is of such breadth that the fact that a leading question may have been asked would not furnish ground for reversal.

Appeal from the District Court of Hunt. Tried below before the Hon. Wm. Pierson.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Clark & Sweeton,* for appellant.—On question of separation of jury:

McCampbell v. State, 40 S. W. Rep., 496; Wilcek v. State, 64 Texas Crim. Rep., 1, 141 S. W. Rep., 88; Chant v. State, 73 Texas Crim. Rep., 345, 166 S. W. Rep., 513; Eads v. State, 74 Texas Crim. Rep., 628, 170 S. W. Rep., 145.

On question of misconduct of jury: McCane v. State, 33 Texas Crim. Rep., 476, 26 S. W. Rep., 1087; Rix v. State, 61 Texas Crim. Rep., 416, 135 S. W. Rep., 150; Booker v. State, 54 Texas Crim. Rep., 80, 111 S. W. Rep., 744.

On question of telephone conversation by juror: Early v. State, 51 Texas Crim. Rep., 382; McDougal v. State, 194 S. W. Rep., 944; Logan v. State, 66 Texas Crim. Rep., 506, 148 S. W. Rep., 713; Parshall v. State, 62 Texas Crim. Rep., 177, 138 S. W. Rep., 759.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of telephone conversation by juror: Parshall v. State, 62 Texas Crim. Rep., 177; Bryan v. State, 63 id., 200; Tores v. State, 74 Texas Crim. Rep., 37, 166 S. W. Rep., 523.

On question of cross-examination: Rainey v. State, 20 Texas Crim. App., 473; Drake v. State, 29 id., 265; Wilson v. State, 37 Texas Crim. Rep., 156; Hall v. State, 43 id., 479; Pinckard v. State, 62 id., 602.

MORROW, JUDGE.—Appellant was convicted of murder and punishment fixed at confinement in the penitentiary for five years.

Appellant, using a shotgun, shot deceased, Mike Yeager, twice and killed him. They had a wordy altercation the day before the homicide. Deceased became angry and went to his home and started away with his pistol, making threats, but upon importunities of his wife and friends remained at home. Appellant and deceased were both negroes, and on the day of the homicide deceased went to the home of a white man for whom he had done work at intervals for several years. He took his pistol with him, wrapped it in cloth or paper and laid it in an outhouse. A negro woman seeing it and inferring from remarks deceased had made to her that he contemplated injury to appellant she notified the wife of deceased, and also sent word to appellant to avoid the premises as the deceased was armed and threatening to kill him. Appellant was working on an ice wagon for a witness named Waid, and after receiving information from the messenger and others he procured the shotgun from Waid's office with which he killed deceased. The evidence touching the immediate incidents of the homicide was conflicting. Deceased was working with a hoe near a rose bush, and, according to the testimony of the lady of the house, was so engaged when the first shot was fired, he having prior thereto made no demonstration and had no conversation with appellant. Appellant's theory was that before the first shot was fired some words between him and deceased passed, that after the first shot deceased retreated, but when both shots were fired he was unwrapping his pistol. The State's

theory was that the deceased's pistol was in the outhouse and not in his possession when he was shot.

The issues of manslaughter and self-defense were submitted in a charge which was not subject to any of the exceptions addressed to it.

Several witnesses testified that the reputation of deceased was that of a violent and dangerous man. One of these was Waid, the city marshal, and the employer of appellant. Waid also testified to the effect that after the homicide the deceased's pistol was found in an outhouse, the defendant's theory being that it had been taken there by someone after the shooting. When Waid heard of the trouble he went to the premises, and, according to the testimony of the negro woman, said, referring to deceased: "Where is the damn negro son-of-a-bitch?" Objection was made to this testimony but the bill is silent as to the surrounding facts, and fails to give the court sufficient information upon which to determine that its reception was erroneous. It was doubtless received by the trial court on the theory that it tended to show the animus of the witness Waid. While the witness who gave this testimony was on the stand she was, on cross-examination, asked if Waid had not arrested her and her girls for running a disorderly house. She answered this inquiry in the negative. The defendant offered to prove that she had been arrested by Waid for prostitution and other offenses. Her animus toward Waid was a proper subject of inquiry and the fact that she had been arrested by Waid might have enabled the jury to form an estimate of her attitude. We think, however, that the offense of, which she was arrested was not a relevant inquiry. Her testimony might have been discredited by proof of her general reputation as a prostitute, or by proof of complaints or prosecutions therefor. We think the court should have allowed the testimony. We do not think, however, that the error in rejecting it is of such importance as would justify a reversal. Her testimony bore alone upon the animus of Waid, a witness for appellant, who gave no testimony as to the incidents of the homicide but testified alone to facts which were established by the testimony of other witnesses, namely, the bad reputation of deceased and the fact that deceased's pistol was found in an outhouse on the premises where the homicide took place after the homicide.

Appellant while on the stand and under cross-examination denied that in the difficulty with deceased on the day preceding the homicide he had used an oath, and was asked if that statement was as true as any of his other testimony. This was not a proper question, but as the record is presented in the bill it appears that the appellant did not answer it further than to reiterate his statement that he did not use an oath on the occasion mentioned.

The witness Waid was, on recross-examination by the State, assailed by innuendo as to his bias in favor of appellant. He admitted having employed an attorney for him, that the appellant had for a long time been in his employ; that on a former occasion, in a difficulty with de-

ceased, he had shot him, wounding him; that he regarded him as a dangerous man, and the gun used by appellant at the time of the homicide belonged to the witness and was obtained by appellant from the office of the witness during his absence. The court was requested to inform the jury in a special charge that there was no evidence showing or tending to show that the witness Waid instigated or was connected with the homicide. This charge, if given, would have been a comment by the court on the weight to be given the facts legitimately developed tending to ·disclose the bias of the witness Waid in favor of appellant.

During their deliberations the jury used a sleeping room in the same building over the room in which they deliberated and separated therefrom by a partition and stairway. It was in the same enclosure and the outside doors shut and locked. One of the jurors went to this room to bed leaving the others in the room in the lower story. This juror· had no communication with outsiders, was not out of the building in· which the jury was confined, and we think the facts disclose no such separation as under the statute would justify a reversal. Jinkins v:. State, 41 Texas, 128; Cox v. State, 7 Texas Crim. App., 1; Branch's. Ann. P. C., p. 299, and cases listed; Watson v. State, 82 Texas Crim.. Rep., 305, 199 S. W. Rep., 1113, and cases cited.

The wife of one of the jurors was sick and after the jury were em-- paneled he had telephone communication with his mother-in-law and other members of his family which, according to his testimony, had no· reference to the case but was confined to an inquiry as to the condition of his wife. These communications are stated by the trial judge, and,. as we gather from the record, admitted by counsel to have been with the· permission of the court and the consent of the defendant and one of his attorneys. The persons to whom the juror talked were not called to verify his statement and we are referred to Early's case, 51 Texas Crim. Rep., 382, as an authority for the contention made by appellant that these facts require a reversal of the judgment. They are distinguished. from those disclosed in Early's case by the important fact that in that case the conversation was had without the consent of either the court or the defendant or his attorney. It was held that the communica-- tions over the telephone being unauthorized would be treated as in-- jurious unless the State was able to show the contrary. In this case· the statute, article 748, was in no sense transgressed unless it be that: the conversations which the juror had were not in the presence of the court. That article of the statute permits conversations in the pres-- ence and by the permission of the court. It is uncertain whether the· bill shows that the conversations were not in the presence of the court.. It does show that he gave his permission and that the appellant and his attorney consented that the conversations should be had over the telephone with members of his family. A fair implication from this consent and agreement, we think, is that no injury resulted to the appellant by the juror conversing with the members of his family. And we are of the opinion that the agreement and permission mentioned,

together with the proof, which was not controverted, that the juror only talked to members of his family and about the condition of his wife would, under the facts of this case, discharge such burden as rested upon the State. See Johnson v. State, 27 Texas, 758; Nance v. State, 21 Texas Crim. App., 457; Watson v. State, 48 Texas Crim. Rep., 323; Shaw v. State, 32 Texas Crim. Rep., 155; Kutch v. State, 32 Texas Crim. Rep., 184; Murphy v. State, 40 S. W. Rep., 978.

In developing facts concerning the alleged misconduct of the jury there were questions asked by the State which appellant complains of on the ground that they were leading. This inquiry was before the court and not before the jury, under which circumstances the rules of evidence governing the introduction of testimony are much more lax than in developing facts on the trial of a case before a jury. The discretion allowed the trial judge as to the method of ascertaining what occurred in the jury room is of such breadth that the fact that a leading question may have been asked would not furnish ground for reversal of the case.

Finding no reversible error the judgment is affirmed.

*Affirmed.*