LEWIS CERNOCH V. THE STATE.

No. 17104. Delivered February 13, 1935.
Rehearing Denied April 10, 1935.

The opinion states the case.

*W. C. Wofford,* of Taylor, for appellant.

*D. B. Wood,* Criminal District Attorney, *Wilcox & Graves,* and *W. H. Nunn,* all of Georgetown, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, death.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed H. J. Lindsey by shooting him with a gun.

The proof on the part of the State was, in substance, as follows: On November 10, 1933, Sam Moore, who was constable at Granger, filed complaint with J. W. Nunn, justice of the peace, charging appellant with disturbing the peace and using abusive language toward Frances Semsek. On November 14, 1933, appellant was tried on said complaint in the court of J. W. Nunn, justice of the peace, and convicted, his fine and costs aggregating $28.05. The justice of the peace gave appellant until two o'clock in which to secure the money with which to pay said fine and costs. In the meantime he was not placed in the custody of an officer. Appellant returned to the court at two o'clock and requested further time, which was granted. He did not return and was not seen in Granger again until just prior to February 15, 1934. On the morning of February 15, 1934, at Constable Moore's request, J. W. Nunn, justice of the peace, issued a commitment for appellant and delivered it to Moore, who, with his brother, Zannie Moore, went into the country and arrested appellant. At first appellant refused to come to town, and started backing off toward the house, but finally agreed that he would come to Justice Nunn's office provided

Henry Volek would bring him. Moore permitted appellant to go into the house to change his clothes. Appellant then rode to Granger in a car with Henry Volek. When appellant reached the office of the justice of the peace there were present J. W. Nunn, the justice, Sam Moore, constable, H. J. Lindsey, city marshal of Granger, M. B. Colbert, assistant district attorney, and four other men. After some conversation, the justice of the peace directed Moore and Lindsey to take appellant to jail. As they stepped out on the sidewalk with appellant, he (appellant) drew an automatic pistol and began firing rapidly. Lindsey, deceased, who was unarmed, ran around an automobile and was pursued by appellant, who fired upon him and killed him instantly. In the meantime, Sam Moore had gone into J. W. Nunn's office. Apparently, he had been shot through the left arm. After killing Lindsey, appellant ran rapidly back into the office and continued shooting back and forth at J. W. Nunn, justice of the peace, and Assistant District Attorney Colbert, both of whom were unarmed. He also fired upon Moore, and mortally wounded him. The justice of the peace was struck by one of the bullets but apparently was not seriously injured. Appellant did not fire at the men in the office who had not been connected with his trial for disturbing the peace. Leaving the office, appellant placed three more shells in his automatic pistol and walked out on the street. He made an effort to get an automobile, but was unsuccessful. He was later overpowered and lodged in jail.

The court submitted a charge on the law of insanity. We take it that it was out of an abundance of precaution that the charge in question was given. We are doubtful as to whether the issue was raised.

It is shown in bill of exception No. 1 that the case was called for trial on the 12th of March, 1934, at which time both the State and appellant announced ready for trial. On the 13th of March, 1934, after both the State and appellant had introduced evidence, appellant filed a motion asking a postponement of the trial for at least sixty days in order that he might be examined by certain alienists on the question of his sanity. It was averred in the motion that said alienists had testified on the trial that in their opinion, from the brief examination they had made of appellant, he was sane, but that in the time they had used in making said examination, it was impossible to determine definitely whether he was insane. It was further averred in the motion that within a few days after the commission of the offense appellant had filed a motion requesting the court to ap-

point a commission of physicians from the state hospital at Austin to examine him on the question of sanity. Approximately forty days after the trial was concluded appellant filed an amended motion for new trial. No affidavits setting up that there was available any additional evidence on the question of insanity were attached to the motion. It is true that one of the grounds of the motion related to the refusal of the court to grant the motion for postponement, it being averred that appellant was represented by counsel appointed by the court, and had no money to employ alienists to examine him. Many witnesses for the State, who had known appellant for a number of years, testified that, in their opinion, he was sane. It does not appear that any of the witnesses offered by appellant gave testimony indicating that he was insane. We know of no case holding that, under the circumstances disclosed by the record, it would be error for the trial judge to refuse to stop the trial and order a postponement or continuance. We are constrained to hold that the bill of exception fails to reflect error.

It is shown in bill of exception No. 2 that a witness for the State testified, over appellant's objection, that deceased, Henry Lindsey, was not in the habit of carrying a pistol. It was undisputed that deceased was unarmed at the time he was killed. There was no issue of self defense in the case. Under the circumstances, we are unable to perceive how this testimony could have injured appellant.

It is shown in bill of exception No. 3 that J. W. Nunn, justice of the peace, testified, over appellant's objection, that appellant shot at Sam Moore at least three times while he was down. We think this testimony was res gestae. It illustrated appellant's state of mind at the time he killed deceased, and tended to show "a 'heart regardless of social duty and fatally bent on mischief.' " Arcos v. State, 29 S. W. (2d) 395. Moreover, the killing of deceased and Moore grew out of the same transaction and were practically contemporaneous. The crimes were intermixed and blended with one another and so connected that they formed an indivisible criminal transaction. Claxton v. State, 4 S. W. (2d) 542.

It appears from the testimony heard upon the motion for a new trial that after the jury had been impaneled and during the progress of the trial they were taken to a barber shop early one morning. When they entered the barber shop the doors were locked. There was only one door through which an entrance could be gained, and that was from the front sidewalk. There were no back or side doors. There was one win-

dow, but it was completely closed. Behind a partition wall in the back was a toilet. There were in the shop three barbers, a negro porter and a young man named Skaggs. While the members of the jury were getting shaved one of them, W. T. Via, went to the toilet in the back of the shop. While the juror was in the toilet he heard the remainder of the jury leaving the barber shop. He immediately jumped up and came on through the barber shop, buttoning his clothes and ran after the jury. In leaving the barber shop for the courthouse, which was nearby, the jurors were "trailing along in pairs." One of the jurors testified that he was in the rear, and that when juror Via stepped off of the curb to rejoin them, that he was not over fifteen feet from him. It appears that the juror ran rapidly. It was early morning and there were no people on the street where the jury were crossing toward the courthouse. All of the jurors, including Via, testified that there was no discussion or mention of appellant's case by any person while they were in the barber shop. The juror Via testified that after the jury left him in the shop there was no discussion or mention of the case. The State brought forward as witnesses all of those present in the barber shop. They testified that the case was not mentioned or discussed during the entire time that the jury were in the shop. Further, the testimony was to the effect that all of the newspapers had been gathered up and that there was no newspapers in the shop while the jury were there. In short the testimony of the State completely rebutted the presumption of injury. See Tucker v. State, 26 S. W. (2d) 638. From Cavanar v. State, 269 S. W., 1053, we quote the following:

"A separation of the jury is set up in the motion for new trial, but the facts developed do not, in our judgment, sustain the contention. One of the jurors went into the toilet of the courthouse and the other jurors went up stairs into the courtroom. He followed them shortly, and in our opinion the transaction comes within the purview of the law as stated in Bayer v. State, 96 Texas Crim. Rep., 310, 257 S. W., 242; Wood v. State, 84 Texas Crim. Rep., 187, 206 S. W., 349; Watson v. State, 82 Texas Crim. Rep., 305, 199 S. W., 1113; and other cases referred to in these mentioned."

We have carefully examined all of appellant's contentions and are of the opinion that reversible error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant renews complaint that the trial court refused to permit him to withdraw his announcement and continue the case for sixty days in order that physicians from the insane asylum at Austin might observe and examine him for the purpose of basing on such observation and examination their opinion as to his sanity. The question came about in the following manner. Shortly after an attorney had been appointed by the court to represent appellant said attorney requested the court to appoint physicians from the State Hospital at Austin to examine appellant. The court declined the request. Before the trial attorneys representing the State did get two of the physicians from said institution to come to Georgetown, where appellant was in jail, and there observe and examine appellant for about an hour. They testified that from such brief examination and observation, in their opinion, appellant was sane; but also stated, that from a medical standpoint, it would take from thirty to sixty days' observation before a satisfactory opinion could be reached regarding appellant's sanity. It was then the request came for the withdrawal of the announcement and the continuance of the case. In declining to appoint the commission, and to permit the continuance of the case, the trial court, we think, was within the discretion vested in him. We have not been referred to any law which would have enabled the court to enforce a request or an order requiring the physicians connected with the State Hospital for the Insane at Austin to come to another county, and there remain long enough to satisfy themselves by observation and examination as to the sanity of one accused of crime. The whole matter is too intangible for this court to say the trial court committed error in his action regarding the matter. When reduced to its last analysis, appellant's proposition amounts to asking this court to hold that in a case where appellant is without means and it is proposed to interpose the defense of insanity the trial court should upon request of appellant or his attorney appoint a committee of doctors to observe the accused for such time as the physicians may think requisite for them to reach a satisfactory opinion upon the question of his sanity, and that for a failure to make such appointment or for failure to continue a case until such observation could be made, a judg-

ment of conviction should be reversed. We think it would be too speculative and going entirely too far afield for this court to announce that such action by the trial judge was an abuse of discretion which would demand a reversal.

M. B. Colbert's evidence was in substance as follows: Appellant had consulted him in regard to the collection of a debt claimed by appellant to be owing him by Frank Semsek. The latter died and his representatives denied the debt and refused payment. Appellant again went to Colbert and in the course of a conversation made threats of violence towards the Semsek family which he carried out, which resulted in a fine being assessed against him. Resentment because of an effort to collect the fine furnished the motive for the killing. The testimony of Colbert as to the threats of appellant towards the Semseks was objected to as being a privileged communication between attorney and client. The complaint is brought forward in bill of exception number four. We can not agree with appellant's contention. See Underhill's Cr. Ev., 3rd Ed., sec. 292, p. 404. Ott v. State, 87 Texas Crim. Rep., 382, 222 S. W., 261; Ormon v. State, 22 Texas App., 604; Ormon v. State, 24 Texas App., 495.

No error is revealed by bill of exception number six, which brings forward complaint that the undertaker was permitted to testify that there were five wounds in Moore's body—Moore having been killed at the same time Lindsey was killed—and that one of the wounds was in Moore's left hand, breaking a bone, and that Moore was left-handed. Nothing in the bill discloses how the proof that Moore was left handed, and one wound was in that hand, could have been harmful to appellant, even if the details complained of were not properly in evidence.

We have again considered all questions which were disposed of in our original opinion, and believe they were correctly decided. We find no error calling for reversal in other bills presenting the matters referred to.

The motion for rehearing is overruled.

*Overruled.*