### MRS. P. S. PEARSON V. THE STATE.

No. 22078. Delivered May 20, 1942.
State's Motion for Rehearing Granted June 24, 1942.
Appellant's Motion for Rehearing Denied November 25, 1942.

BEAUCHAMP, Judge, dissenting.

The opinion states the case.

*William Cantrell, Jr.,* of Greenville, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The conviction is for the offense of having performed an abortion. The punishment assessed is confinement in the State penitentiary for a term of two years.

Appellant first challenges the sufficiency of the evidence to justify and sustain her conviction. The State's testimony, briefly stated, shows that on or about the 15th day of February, 1940, the prosecutrix went to the home of the appellant where and at which time appellant performed an abortion upon her. Appellant took the witness stand and testified in her own behalf. She denied that she performed the act with which she is charged. This raised an issue of fact which the jury decided adversely to her; and we would not, under the facts here presented, be justified in disturbing their verdict.

The only other serious question presented for review relates to the court's action in overruling appellant's motion for a new trial based upon the misconduct of the juror, Jack Finney. It was charged in the motion for a new trial that after the jury had been selected and sworn but before they reached a verdict, the juror talked from the window of the jury room to Ralph Townes, B. C. Currin and Johnnie Wilkins; that at another time during the course of the trial, while the jurors were at the Bus Terminal Cafe, juror Finney left the other members of the jury in the cafe, walked out on the sidewalk and went a short distance up the street to a drug store, where he pur-

chased a newspaper, and then returned to the cafe. Upon the hearing of the motion, appellant placed the juror upon the witness stand and elicited from him the fact that he did have a conversation through the window of the jury room with Ralph Townes, B. C. Currin and Johnnie Wilkins; that he did not remember whether or not any officer was present at the time. However, an officer came up later and cautioned the jurors about speaking to people on the street through the window.

With reference to the incident at the cafe Finney testified as follows:

"I got up and left the rest of the jurors in the restaurant and went outside. * * * I walked next door. I believe it was Barrett's drug store. * * * I walked up there to the paper rack standing out in front, bought a paper and came back, and the officer did not accompany me."

With reference to the conversation he had with Ralph Townes, he testified as follows:

"Ralph Townes was standing across the street, and I was standing there looking out; and I don't remember what he said, but he came across the street and I asked him if the Jaycees football had worked out any and he said it worked out Monday night, I believe. That's all I remember that was carried on; it was about the football team one way or the other. I don't remember anything said about any other subject."

As to the conversation with Johnnie Wilkins from the window of the jury room, Finney testified:

"Johnnie said, 'Well, we are going to keep you up there next week,' something like that, 'so you can't go to the game,' and I just laughed and didn't say anything. Wilkins and Currin were standing together. I asked Mr. Currin to call the bakery and have them send my pipe up there, which they did. I did not say anything to Ralph Townes, nor did he say anything to me in any way in regard to the trial on which I was sitting as a juror."

The witness declared that he did not at any time while he was impaneled as a juror, from the beginning to the end, have any conversation with any one concerning the trial of the case.

The testimony of Mr. Harrison, the officer in charge of the jury, is to the effect that when the juror walked out of the Bus Terminal Cafe, he (Harrison) arose from his seat at the dining table, walked out on the sidewalk and watched him; that if Finney had any conversation with any one in an ordinary tone of voice he (Harrison) would have heard it. He could not say definitely whether Finney bought the newspaper from a man or a boy.

The State called ten of the jury panel but their testimony failed to discharge the burden resting upon it to rebut the presumption of injury.

Ralph Townes was called by the State as a witness and testified in substance that he remembered when the case of the State of Texas v. Mrs. Pearson was tried; that he was going into Palmer's, and Jack Finney hollered at him and asked him when they were going to play the Jaycees ball game and he (Townes) replied, "On the following Tuesday night"; that he did not have any conversation with him about the case; that he bought a quarter's worth of cigars at Palmer's and Finney wanted a cigar and he (Townes) tried to throw it to him but could not do it; that Finney did not make any comment to him concerning the case.

The State failed to call B. C. Currin or Johnnie Wilkins as witnesses; neither did it call the person from whom Finney purchased the newspaper to testify relative to his conversation with the juror. In our opinion, the conduct of the juror, as related by him on the hearing, comes within the inhibition of Article 668, C. C. P., which provides as follows:

"After the jury has been sworn and impaneled to try any felony case, they shall not be permitted to separate until they have returned a verdict, unless by permission of the court, with the consent of the attorney representing the State and the defendant, and in charge of an officer."

This seems to be a mandatory provision and should be strictly observed in the trial of criminal cases.

Article 671, C. C. P., reads as follows:

"No person shall be permitted to be with a jury while they are deliberating upon a case, nor be permitted to converse with

a juror after he has been impaneled, except in the presence and by the permission of the court, or except in a case of misdemeanor where the jury have been permitted by the court to separate. No person shall be permitted to converse with the juror about the case on trial."

It seems to be fairly well settled in this State that where a juror is shown to have conversed with an outsider that the person with whom he talked must be presented to rebut the presumption of injury, the decisions being to the effect that the testimony of the juror alone is not sufficient to overcome that presumption. In the instant case, the State failed to produce the party from whom the juror purchased the newspaper. Neither did it produce Currin or Wilkins to show that they, or either of them, mentioned anything to him relative to the case on trial. Consequently the State failed to discharge the burden which rested upon it. See 31 Tex. Jur. p. 220, sec. 29; Toussaint v. State, 92 Tex. Cr. R. 374, 244 S. W. 514; McCollum v. State, 129 Tex. Cr. R. 480, and cases there cited. In the case of Chappel v. State, 50 S. W. (2d) 327, the subject is fully discussed and many authorities are cited in support of the rule stated. To again enter upon an extended discussion thereof would serve no useful purpose, as a mere reference to the authorities cited is deemed sufficient. It is our candid opinion that under the facts proven upon the hearing of the motion, that the trial court erred in declining to grant a new trial.

The judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

The State has filed a motion for a rehearing herein, suggesting that we were in error in holding that the State had not discharged its burden in showing that appellant suffered no injury in the communications had by a juror with persons other than the jury during its deliberations.

As to the conversation with Ralph Townes, the State placed Townes on the stand, and it seems to us discharged its burden by showing the lack of harm therein as to the conversation with Johnnie Wilkins. None is shown by appellant. It is shown that the juror answered nothing when Wilkins said: "We are going to keep you up there until next week," but the juror merely smiled.

The main proposition complained of by appellant as misconduct of the juror Finney was his purchase of a newspaper during the noon hour while the jury were just completing their noon meal. The juror desired to purchase a newspaper; the officer in charge of the jury had some one phone the trial judge who said it would be all right for the juror to purchase a paper. The juror who was near the front door of the cafe stepped out the door and went to a drug store near by, about 25 feet away, and in the doorway there were some newspapers displayed on a wire rack; he handed some one a coin and picked up a newspaper and returned to the cafe door outside of which some jurors were standing and the remaining jurors were preparing to come out on the street. The deputy sheriff attending the jury testified that:

"Jack Finney was one of the members of that jury. Yes, he went to the Barrett drug store and bought a newspaper. At the time he went there and bought that newspaper I was in front of the cafe. From where I was standing I was twenty or twenty five feet, I would say—possibly the width of this room—from Jack Finney. He was entirely in my sight at all times; I could see him all the time and from where I was standing I could see the other eleven members of the jury at the same time I saw him. In other words, he was about 20 or 25 feet West of me. The other members of the jury were in the cafe, which was north of me and I could look here at them or look out this way to him. All I had to do was to turn my head; of course if I was looking at him I had to turn my eyes this way, but all I had to do was to turn my eyes this way, just like this group of people here. Mr. Finney bought a paper at Barrett's drug store. He didn't have any conversation with anybody, he wasn't up there long enough to have a conversation with anybody. He was up there a minute. * * * There was no obstruction between me and where Mr. Finney bought the newspaper. If he had had any conversation with anybody in an ordinary tone of voice I am sure I could have heard it; he

walked up there and said 'I want a paper,' and handed the man a coin, I don't know whether it was a nickel or dime or what, but he turned around and walked right back."

Again he said: "As to whether I testify positive no one could have communicated with Jack Finney while I was there, I can testify no one did, but I don't know what they could have done."

The witness Harrison also was sent to the drug store and requested to bring into court the person who sold Finney the newspaper, and the employees answered that no one remembered the occurrence, and of course none could testify relative thereto.

The testimony of some of the jurors showed that Finney was at all times on the trip to the drug store and back within sight and hearing of the deputy sheriff, and some of them knew nothing about it. It is not absolutely necessary that the person with whom the transaction was had should be produced on the hearing, so it seems to us, provided the lack of harm can be shown by other witnesses who heard the purported communication.

We think the State has discharged the burden of showing the harmlessness of this conduct upon the part of the jury, and while the juror doubtless deserves a reprimand, we do not think the same is such misconduct that it should cause a reversal of this case.

Thus believing, the State's motion for a rehearing is granted, the judgment of reversal is set aside, and the judgment is now affirmed.

BEAUCHAMP, Judge (Dissenting).

I find myself unable to agree with the majority that the State's motion for rehearing should be granted and the judgment of the trial court affirmed.

Without the necessity of restating the facts, it is observed that the State did not call for any of the parties at the place where the juror bought the newspaper, but relied upon the sufficiency of the report made by the deputy sheriff that he had inquired and nobody remembered having sold the news-

paper to the juror. We find no bill of exception to this evidence. It was inadmissible as hearsay and, in my opinion, without force to discharge the burden cast upon the State to show what did occur by the parties involved other than the juror. It was easily within the reach of the court to bring all of the parties who worked in this small stand and let them testify that they had no conversation with the juror, rather than accept the hearsay statement by the deputy sheriff that he was unable to find anyone who remembered the incident. It is not even shown that he interviewed all of them.

The opinion on original submission expresses my view of the case sufficiently on the other conversations which the juror had and I think it is a matter so fundamental that the rules governing the conduct of jurors set out in the original opinion should not be relaxed in the least. As I view it, that is the result of the majority opinion in which I am unable to concur.

### ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

Appellant vigorously assails the correctness of the conclusion of the majority of this court that the facts developed upon the motion for new trial did not show jury separation nor conversing with the jury under the provisions of, and as contemplated by Arts, 668 and 671, C. C. P., respectively.

The facts touching the questions at issue are set forth in the original opinion and need not here be restated. In so far as the facts relate to the issue of the jury separation, it appears that the juror Finney separated himself from the remainder of the jurors and went a distance of some twenty or twenty-five feet, to a news stand, where he purchased a newspaper. During all of this time, he was in the view of the deputy sheriff, who had the jury in charge. There is an absence of any proof that any conversation took place between the juror and any other person or that anything was said or done that might have been or was prejudicial to the appellant. In fact, the juror says that there was not, and the deputy sheriff strongly corroborates him. Mere temporary separation of a juror from the remainder of the jurors does not constitute jury separation as contemplated under the provisions of Art. 668, C. C. P.

We remain convinced that the facts presented do not show jury separation such as would require the granting of a new trial. In support of this conclusion, we call attention to the following cases: Patterson v. State, 293 S. W. 570, 106 Tex. Cr. R. 553; Parker v. State, 77 S. W. (2d) 532; 127 Tex. Cr. R. 454; Cernoch v. State (a death penalty), 81 S. W. (2d) 520, 128 Tex. Cr. R. 327.

Touching the question of conversing with the jury, or a conversation indulged in by a juror, as contemplated by Art. 671, C. C. P., it is now the settled rule that, where it is made to appear that a conversation has occurred between a member of the jury and some person other than as authorized under the provisions of said statute, the State must show that the accused was not injured or prejudiced thereby. Such showing, however, is not accomplished by the testimony of the juror alone. There must be testimony other than that of the juror showing that the accused was not injured or prejudiced by the conversation so had. The authorities supporting the rule are cited in the prior opinions herein.

Appellant attests the correctness of the rule, and insists that, under the facts here presented, the State has not discharged the burden resting upon it of showing non-injury, outside of, and other than by, the testimony of the juror. He insists that the testimony showing a conversation between the juror Finney and Townes, Wilkins, and Currin, while the juror was in the jury room and the other named parties were outside the building and across the street, comes within the rule stated.

As to the conversation with Townes, the State discharged the burden of showing non-injury to the appellant, because Townes testified, and, by his testimony, not only corroborated Finney's statement as to the subject matter of the conversation but attested the fact that appellant was in no manner injured thereby. The conversation with Townes did not, therefore come within the statute mentioned, and did not authorize or require the granting of a new trial.

Appellant is, therefore, relegated, in his contention, to the conversation alleged to have occurred between the juror Finney and Wilkins, and between Finney and Currin.

It must be borne in mind that what was said by the parties was in a loud tone of voices and was while they were some distance apart. There was nothing secretive or subdued about what was said or about the statement so made. When analyzed, the statement made by Wilkins to Finney was ex parte, because Finney made no reply thereto, but merely laughed. The statement of Finney to Currin, asking that Currin call the bakery and have them send his pipe to him, was not replied to by Currin. Nor is it shown that Currin said anything to Finney.

Do these statements, under the circumstances pointed out, constitute a conversation, within the meaning of Art. 671, C. C. P.? We adhere to our former opinion that they do not; and, in support of that conclusion, attention is called to the case of Patterson v. State, supra, where a juror, in passing, spoke to a person, and no reply was made by the person. It was there held that such did not constitute a conversation between the parties within the meaning of the statute mentioned.

The term, "to converse with a juror," as used in Art. 671, C. C. P., is construed to mean something more than mere salutations or ex parte statements.

Applying such construction to the facts here presented, the conclusion is reached that a conversation by or with a member of the jury, within the meaning of Art. 671, C. C. P., is not shown.

From what has been said, it follows that we remain convinced that reversible error is not reflected by this record, and the appellant's motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.