TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00035-CR







Darin Dawantay Fullilove, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 47,219, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING








 A jury convicted Darin Dawantay Fullilove of robbery aggravated by use of a
deadly weapon and assessed punishment at forty years in prison. See Tex. Penal Code Ann.
§ 29.03(a)(2) (West 1994). Fullilove contends the court should have granted a mistrial when a
juror reported having a conversation with the victim's son. Fullilove also argues that the trial
court should have determined whether a reasonable jury could have found he committed or was
criminally liable for certain unadjudicated extraneous offenses before allowing the jury to hear
evidence of those offenses. We will affirm the conviction.

 We will dispense with a lengthy review of the testimony at the guilt-innocence
phase because Fullilove does not challenge the sufficiency of the evidence to support his
conviction. The victim, Bill Peters, was abducted at knifepoint outside a restaurant. He recalled
seeing two men and a woman before he was forced into the trunk of a car. They took money from
him and used his automatic teller machine card to withdraw money from his bank account. They
abandoned the car, but left the trunk open for him to escape. 

 Fullilove admitted he and his wife participated in the offensive activities with
Morecy Reginald Jackson, but testified they were initially ignorant of the crime in progress and
were later coerced into participating. Fullilove testified that Jackson put the victim in the trunk
without the Fulliloves' knowledge. He testified that Jackson threatened him and his wife at
knifepoint to participate in the offense.

 Jackson testified against Fullilove, saying that Fullilove wielded the knife and
participated willingly in the entire robbery. He admitted that his plea agreement with the State
limited his sentence to a maximum of twenty years in prison.

 The first issue in this appeal is whether the trial court should have granted
Fullilove's motion for mistrial because the victim's son conversed with a juror. Code of Criminal
Procedure article 36.22 states, "No person shall be permitted to converse with a juror about the
case on trial except in the presence and by the permission of the court." When a juror converses
with an unauthorized person, injury to the accused is presumed. Green v. State, 840 S.W.2d 394,
406 (Tex. Crim. App. 1992). This presumption is rebuttable. Id. If the evidence shows the case
was not discussed or that nothing prejudicial to the accused was said, then appellant has not been
injured. Id. We review the court's denial of the motion for an abuse of discretion. Robinson v.
State, 851 S.W.2d 216, 230 (Tex. Crim. App. 1991).

 The fact that the testimony on this issue came only from the affected juror does not
require reversal. Fullilove cites a 1942 case in which the Court of Criminal Appeals stated:


It seems to be fairly well settled in this state that where a juror is shown to have
conversed with an outsider that the person with whom he talked must be presented
to rebut the presumption of injury, the decisions being to the effect that the
testimony of the juror alone is not sufficient to overcome that presumption. 


Pearson v. State, 165 S.W.2d 725, 727 (Tex. Crim. App. 1942). The Court of Criminal Appeals
had abandoned the quoted language by 1991, affirming the denial of a motion for mistrial when
the only testimony came from the possibly compromised juror. See Robinson, 851 S.W.2d at 229-230. In Robinson, a juror's sister told the juror about a newspaper article reporting that the
defendant had killed an accomplice after committing the charged murder; that evidence was not
before the jury. The juror testified that she could set aside that comment and consider only the
evidence before her. Id. at 229. She also testified that she had not told any of the other jurors
about the article; the court instructed her not to tell them. Id. at 230. The court held that "[t]he
trial judge was in a position to observe [the juror's] testimony, and he apparently chose to believe
it." Id.

 The testimony about the juror's conversation in this case came only from the
affected juror, Mr. Bailey. On the second day of trial, Bailey volunteered that he might know
Jackson, the testifying accomplice. On the third day, Bailey volunteered that he had been
contacted by the victim's son. The colloquy with Bailey on the third day included the following
exchanges:


JUROR BAILEY:  I'm a purchasing agent at Wilson Art and I went in and checked
my paperwork and I went in, this young guy that I know approached me and said
that you are on the jury duty for my dad, Mr. Peters and I didn't know that that
was his--which I didn't know nothing about the court or didn't know his father.


THE COURT:  Did you have any further conversation with him about this case or
talk with him?


JUROR BAILEY: No.


THE COURT: You had no knowledge at all about this prior to this?


JUROR BAILEY: No, ma'am.


THE COURT: And has anything that he said or did affected you in any way one
way or the other in this case?


JUROR BAILEY: No.


* * *



[MR. STEVENS, DEFENSE COUNSEL]:  . . . if you give a verdict of not guilty
in this case, you think that's going to affect your job as far as it relates to Mr.
Peters' son?


JUROR BAILEY: No.


MR. STEVENS: You think that you could still be a fair and impartial juror
knowing that you know the victim's son and one of the witnesses in this case?


JUROR BAILEY: Yes.


MR. STEVENS: You feel like that you're going to be more likely to believe Mr.
Jackson because of your knowledge of Mr. Jackson or of Mr. Peters' son?


JUROR BAILEY: No.


MR. STEVENS: You feel like you can be more likely to believe Mr. Peters or feel
sympathetic towards him because of your knowledge and knowing that you deal
with his son?


JUROR BAILEY: No.


* * *



THE COURT: Now you said that this young man came to you and mentioned that
you were on the jury. Is there--was there any other discussion about this case or
did you talk with him or say anything at all like that?


JUROR BAILEY: No, ma'am.


THE COURT: Do you know that man other than seeing him around?


JUROR BAILEY: Which?


THE COURT: The son of the victim.


JUROR BAILEY: Well, he's a machine shop guy and a lot of things that they bring
our order for Wilson Art, so I see him every day.


THE COURT: Has he ever said anything to you about this case or did you ever
have any knowledge of this case prior to your being selected as a juror in this case?


JUROR BAILEY: No.


THE COURT: Is there anything in your mind would affect you so to the point
where you feel that you should not or could not continue to sit on this case and be
a fair and impartial juror?


JUROR BAILEY: No.


* * *



MR. STEVENS: Mr. Bailey, what exactly did his son say to you if you can
remember word for word?


JUROR BAILEY: I walked in and he said, "I heard that you are on the jury duty
for my father."


MR. STEVENS: And what did you say?


JUROR BAILEY: I said yes. Because one of the jurors or people we let out
earlier, one of the persons that wasn't chosen knew his dad and she knew me. And
she knew I was picked. So that's how he found out. 


MR. STEVENS: How do you know that's how he found out?


JUROR BAILEY: Because he said that.


MR. STEVENS: And so after he mentioned that you were on the jury and you told
him yes, you continued to talk to him about how he knew that?


JUROR BAILEY:  No.


MR. STEVENS: Well, maybe I'm misunderstanding. He comes up to you and he
says, I think you're on the jury where my dad's the victim or testifying, words to
that effect?


JUROR BAILEY:  Well, he mentioned this woman Caroline Hardwick and said
that she told me you was on the jury because she wasn't chose, you were picked
and I said that's true.


MR. STEVENS: Okay. And then what did you do?


JUROR BAILEY: I just proceeded to my office.


MR. STEVENS: And he said nothing else to you at all?


JUROR BAILEY: Well, I say one thing. The only thing he said is I hope you do
the right thing.


MR. STEVENS: Did you instruct him not to talk to you about the case?


JUROR BAILEY: I just walked off.


* * *



THE COURT: The juror in fact indicated that he has walked away and had nothing
further to do and did not permit any discussion; is that correct?


JUROR BAILEY: That's true. And could I --I was--I thought about it because I
could have just keep it to myself but I know that I'm an honest person and I don't
have anything to hide. So I could have just kept it to myself but I said I knew that
you all needed to know this. It was like before on Reggie Jackson. I wasn't sure
that I knew him. I know a lot of people in Temple, but I mean, I didn't know that
I knew him until this came out. But I mean it's not going to affect whatever I say.



The court then instructed Bailey not to bring these matters to the attention of the other jurors, and
he assented.

 We conclude that the trial court did not abuse its discretion by denying the motion
for mistrial. Throughout the questioning, Bailey steadfastly insisted that his contacts with the
witness Jackson and the victim's son would have no effect on his ability to function as a juror. 
He insisted on his honesty and pointed out that his honest nature had compelled him to volunteer
both potential conflicts to the court. The trial judge observed Bailey during voir dire, his
testimony, and the entire trial. The judge was in the better position to assess his truthfulness. 
Further, his contact with the victim's son did not bear directly on the central decision in this trial,
which was whether to believe or disbelieve Fullilove's testimony that he was forced into
participating in this crime. Even assuming the victim's son meant Bailey should punish someone
for the attack on his father, Bailey knew Jackson would be punished for the attack regardless of
the verdict in the case against Fullilove. We conclude the court did not abuse its discretion by
concluding that the State carried its burden to rebut the presumption of harm from Bailey's contact
with the victim's son.

 Fullilove next contends that, at the punishment phase, the trial court should have
made "an initial determination as to whether a reasonable jury could have concluded that
unadjudicated extraneous matters raised by the State were matters committed by Appellant or that
they were matters for which Appellant was criminally liable." Fullilove complains specifically
about evidence of the unadjudicated offense of delivery of a controlled substance. The Code of
Criminal Procedure provides that:


evidence may be offered by the state and the defendant as to any matter the court
deems relevant to sentencing, including but not limited to the prior criminal record
of the defendant . . . and, notwithstanding Rules 404 and 405, Texas Rules of
Criminal Evidence, any other evidence of an extraneous crime or bad act that is
shown beyond a reasonable doubt by evidence to have been committed by the
defendant or for which he could be held criminally responsible, regardless of
whether he has previously been charged with or finally convicted of the crime or
act. 



Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a) (West Supp. 1998).

 At issue is the extent of the trial court's preliminary inquiry at punishment into the
relevance of extraneous offenses. Fullilove urges that, before allowing the jury to hear about
extraneous offenses, a trial court must decide that a rational jury could determine beyond a
reasonable doubt that the defendant committed or could be held criminally responsible for the
alleged extraneous offenses. The State contends that the court's preliminary inquiry is limited to
whether, if proved, the extraneous offenses would be relevant to the punishment.

 The concurring and dissenting opinions of the Court of Criminal Appeals in
Mitchell v. State combine to provide majority support for the plurality opinion. See Mitchell v.
State, 931 S.W.2d 950 (Tex. Crim. App. 1996). The plurality wrote that the trial court must
determine as a threshold issue whether a reasonable jury could find beyond a reasonable doubt that
appellant committed or was criminally responsible for the offense; then, if requested, the trial
court must instruct the jury to consider the offenses only if it finds beyond a reasonable doubt that
appellant committed or was criminally responsible for the offense. Id. at 953-54. The three
dissenting judges agreed that the trial court must make a threshold determination, and the three
concurring judges agreed that the trial court must instruct the jury. See id. at 955-57. Combined
with the plurality, these opinions provide majority support for both prongs of the plurality opinion.

 The only issue in this case is the sufficiency of the court's threshold determination
because the court undisputedly gave the required instruction to the jury. The Mitchell court did
not describe the procedures necessary for the threshold determination. It is unclear whether the
trial court must hold a full-blown evidentiary hearing outside the presence of the jury or may rely
on either summaries of testimony or merely argument of counsel. The trial court in this case
heard argument of counsel regarding the nature of the threshold inquiry and a brief description of
the unadjudicated offense, found that evidence of the unadjudicated offense of delivery of a
controlled substance was relevant, and allowed the testimony to proceed.

 We conclude beyond a reasonable doubt that no deficiency in the trial court's
threshold determination that the extraneous offense was relevant contributed to Fullilove's
punishment. We also conclude that no such deficiency affected a substantial right. The
requirement that the trial court make a threshold determination is intended to prevent the jury from
hearing allegations of unadjudicated offenses unsupported by evidence that the defendant
committed them. The State alleged Fullilove delivered a controlled substance. Testimony came
from the undercover agent who bought a substance from Fullilove, the police officers who
delivered the substance to and from the Department of Public Safety laboratories, and the DPS
chemist who found the substance contained cocaine. The videotape of the sale of the crack cocaine
was admitted. The only testimony on Fullilove's behalf at punishment came from his mother, who
denied generally that he had committed crimes. There was no evidence directly disputing
Fullilove's participation in the crack sale. The lack of any substantive preview of the evidence
did not harm Fullilove because there is undeniably sufficient evidence for a rational jury to
conclude beyond a reasonable doubt that he sold crack. Because the trial court did not err by
allowing the jury to hear this evidence, any deficiency in the threshold determination was
harmless.

 Having resolved the issues on appeal in favor of the State, we affirm the trial-court
judgment.



 

 Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Powers*

Affirmed

Filed: February 19, 1999

Do Not Publish





* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).



 inquiry is limited to
whether, if proved, the extraneous offenses would be relevant to the punishment.

 The concurring and dissenting opinions of the Court of Criminal Appeals in
Mitchell v. State combine to provide majority support for the plurality opinion. See Mitchell v.
State, 931 S.W.2d 950 (Tex. Crim. App. 1996). The plurality wrote that the trial court must
determine as a threshold issue whether a reasonable jury could find beyond a reasonable doubt that
appellant committed or was criminally responsible for the offense; then, if requested, the trial
court must instruct the jury to consider the offenses only if it finds beyond a reasonable doubt that
appellant committed or was criminally responsible for the offense. Id. at 953-54. The three
dissenting judges agreed that the trial court must make a threshold determination, and the three
concurring judges agreed that the trial