**Affirmed and Opinion filed June 26, 2014.**



In The

# Fourteenth Court of Appeals

NO. 14-13-00651-CR
NO. 14-13-00652-CR

**JAMES OTIS O'BRYANT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 9th District Court**
**Montgomery County, Texas**
**Trial Court Cause No. 110404578-CR**

## O P I N I O N

A jury convicted appellant James Otis O'Bryant of two counts of aggravated sexual assault of a child. In each case, the trial court found two enhancement allegations "true" and sentenced appellant to prison for life. The trial court ordered the sentences to run consecutively. The sole issue raised on appeal is whether the trial court erred in failing to grant a mistrial on the grounds the jury began deliberating the case prior to being charged. We affirm.

The record reflects that during the State's case in chief, outside the jury's presence, the trial court informed the parties the court administrator had reported:

> ". . .[T]he jurors are chatting about the case while they are sitting in the jury room, refreshing each other's memories about when things happened. My specific instructions were they weren't supposed to be talking about the case or deliberating. So I feel like I need to give them further instructions. But I want to bring that to everybody's attention that that's going on. So is there anything additional that you'd like me to say other than, "Don't discuss the case until I give you instructions to do so"?

The State said, "No" but defense counsel moved for a mistrial based on the violation of the Court's directive to the jurors. The court administrator was sworn in and testified as follows:

> THE COURT: . . . Ms. Templet, you notified me that the jurors were chatting about the case while they are sitting in the jury room, correct?
>
> THE WITNESS: Yes.
>
> THE COURT: Did you overhear anything specific?
>
> THE WITNESS: All I heard was them saying, "Well, this happened on this date. I think it was the 14th or something. Well, no. It happened on this other day." And I saw a couple people flipping through their notes. I can't swear that that is precisely what they were doing, but it sounded a little untoward. So I asked you if that was okay because I would let them know if it was okay or not. I didn't tell them anything. I just told you what I heard.
>
> THE COURT: Right. Okay. Y'all have any questions you want to ask? . . .

> DIRECT EXAMINATION

> BY [THE STATE]:
>
> Q. So you don't -- you didn't hear exactly what was going on in the --
>
> A. No, ma'am. I just wanted to make sure that it wasn't the wrong thing, so that's why I asked the judge if -- because if I had gotten an answer from him saying, "No," or whatever, I might have listened more to see if that's what they were doing. But I can't swear that they

2

were discussing any specific action. They didn't describe anything that I overheard. They were just -- it appeared to me that they were discussing the case.

Q. So it appeared, but you didn't hear any type of deliberation going on?

A. Correct.

[THE STATE]: Nothing further, Your Honor.

THE COURT: [DEFENSE COUNSEL]?

CROSS-EXAMINATION

BY [DEFENSE COUNSEL]:

Q. How long were you in a position where you could overhear what the jurors were talking about?

A. What I overheard was about 30 seconds because I was in my office, and then I heard them talking. And then I don't know what sparked me to listen closer, but it appeared that they were discussing certain events and which days upon which those events happened. Not any specific thing that happened this day. No, that happened on this other day. So --

Q. Did it appear to you as if they were talking about possibly a specific timeline very similar to what the State has been doing today in creating a timeline?

A. Well, since I haven't been in the courtroom hearing anything that's going on in here, I can't verify that it was the same thing as what was being discussed in the courtroom.

Q. What were the numbers that you believe you heard?

A. I thought I heard the "14th" and then maybe the "12th." I'm not positive about the "12th." I know I heard them say the "14th." That's all I know.

Q. And if the judge inquired as to your ability to call out the specific jurors that might have been deliberating, could you see which one?

A. I could not point at the person who was talking. I'm sorry.

Q. Do you know if it was male or female?

A. Male voices.

3

Q. Did you hear more than one?

A. I did hear more than one.

[DEFENSE COUNSEL]: Okay. Nothing further, Judge.

Defense counsel again moved for a mistrial and the trial court denied the motion. Upon the jury's return, the trial court instructed the jury as follows:

> THE COURT: . . . Ladies and gentlemen, it's very important you follow all my instructions. Specifically, you cannot discuss the case or begin your deliberations about the case. You cannot review your notes to convince other people using your notes at this time until I give you the instructions, the charge of the Court and the instructions on the law. You are not able to discuss this case. I want to reiterate that. Everybody clear on that? Okay. Very good.

Appellant argues the discussion of the case prior to deliberations was a violation of Article 36.22, entitled "conversing with jury," which states, "No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." Tex. Code Crim. Proc. Ann. art. 36.22 (West 2006). "A violation of Article 36.22, once proven by the defendant, triggers a rebuttable presumption of injury to the accused, and a mistrial may be warranted." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). The issue presented in this case is whether jurors conversing with each other, about the case and against the court's instructions, constituted a violation.

In *Chambliss v. State,* 647 S.W.2d 257, 266 (Tex. Crim. App. 1983), the Texas Court of Criminal Appeals recognized the article's "main purpose is to prevent an *outsider* from saying anything that might influence a juror." (emphasis in the original). Therefore, when a juror communicates with an *unauthorized* person about the case at trial, there is a presumption that the defendant was injured. *Quinn v. State*, 958 S.W.2d 395, 401 (Tex. Crim. App. 1997)(emphasis added).

4

*See also Ites v. State,* 923 S.W.2d 675, 677 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd). The terms "outsider" and "unauthorized person," as they relate to Article 36.22, have not been interpreted to include other jurors. *See also Pearson v. State*, 145 Tex.Cr.R. 87, 165 S.W.2d 725, 730 (1942) (Ex parte statements made by jurors do not constitute a "conversation" so as to invoke Article 36.22); *Gomez v. State*, 991 S.W.2d 870, 872 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (no error to deny motion for new trial based on Article 36.22 when two jurors were overheard speaking to each other in a public forum; there was "no evidence that the jurors communicated with an unauthorized person").

In this case, there was no communication between any juror and an outsider or unauthorized person. Accordingly, under controlling Article 36.22 authority, appellant has failed to demonstrate a violation. Absent such a violation of Article 36.22, the State did not have the burden to rebut a presumption of harm and the trial court could not have abused its discretion for refusing a mistrial on this ground. *See Benefield v. State*, 389 S.W.3d 564, 570 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

We note that in the context of Tex. R. Evid 606, the Texas Court of Criminal Appeals recently defined "outside influence" to include juror to juror influence. Specifically, in *McQuarrie v. State*, 380 S.W.3d 145 (Tex. Crim. App. 2012), the court of appeals had refused to consider evidence that a juror had told other jurors information he obtained from an internet search at home, while deliberations were ongoing. The court of appeals found the information must be communicated to the jurors from someone other than another juror to be an "outside influence." The Texas Court of Criminal Appeals disagreed and found the plain meaning of "outside influence" to be "something originating from a source outside of the jury room and other than from the jurors themselves." The internet research constituted

5

an "outside influence" because the information obtained originated from a source other than the jurors themselves. The court did not, however, refer to Article 36.22 in the opinion.

Even if we applied *McQuarrie* to the case at bar, appellant could not meet the definition of "outside influence." The record indicates the jurors were discussing what they heard in the courtroom. There was no evidence the jurors were discussing information that was not within the jurors' own knowledge from the trial. *See Colyer v. State,* PD-0305-13, 2014 WL 1686939, *4 (Tex. Crim. App. Apr. 30, 2014). Accordingly, appellant has also failed to demonstrate an "outside influence" under *McQuarrie.*

For these reasons we overrule appellant's issue and affirm the trial court's judgments.


/s/     Tracy Christopher
        Justice


Panel consists of Justices Christopher, Jamison, and McCally.
Publish — Tex. R. App. P. 47.2(b).