ROBERT CHAPPELL v. THE STATE.

No. 14614.   Delivered February 10, 1932.
Rehearing Granted April 27, 1932.
State's Rehearing Denied June 8, 1932.
Reported in 50 S. W. (2d) 327.

The opinion states the case.

*Bartlett, Carter & Rice, Cecil R. Glass,* and *Walter S. Hunnicutt,* all of Marlin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for two years.

The statement of facts does not appear to have been filed in the trial court. This court will not consider a statement of facts which fails to show that it was filed in the trial court. White v. State, 109 Texas Crim. Rep., 479, 5 S. W. (2d) 510; Poteet v. State, 112 Texas Crim. Rep., 466, 17 S. W. (2d) 46. The questions presented by appellant's bills of exception cannot be reviewed in the absence of a statement of facts.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—It is now made to appear that the statement of facts was filed in the trial court within the time required by law. The appeal will therefore be considered on its merits.

It was charged in the indictment, in substance, that the appellant, with malice aforethought, killed Will Bolin by shooting him with a gun.

Appellant had married the deceased's sister, but a divorce had been obtained. Pending the divorce proceedings, appellant and deceased engaged in a controversy relative to the custody of the appellant's small son, the deceased taking the position that the mother was to have exclusive custody of the child. While deceased and appellant were in a lawyer's office discussing the question of settlement between the appellant and his wife under the divorce decree, the deceased (according to the version of the appellant and his witnesses), stated that it had been agreed between him and appellant that the mother of the boy was to have exclusive custody of him. Appellant replied, in effect, that the deceased was lying. A difficulty ensued in which the deceased drew a knife. Appellant's sisters, who were present with him in the lawyer's office, interfered, and deceased cursed them, threatening to kill the appellant, as well as his sisters. Before leaving the office, the deceased apologized to the appellant's sisters, but stated that he would not apologize to the appellant, but would see him later.

According to the state's version of the facts surrounding the homicide, the deceased was standing by the car of the appellant talking to him shortly prior to the firing of the fatal shots. Appellant's small son was standing by the deceased. The deceased told the appellant to get out of the car. The witnesses were unable to understand any words that had passed between the parties. Appellant got out of the car and fired several shots at the deceased. The deceased fell to the street mortally wounded.

Appellant testified, in substance, that he had been advised that the deceased had threatened to kill him; that on the occasion of the homicide the deceased grabbed him in the collar, saying: "I am going to cut your d—n heart out"; that deceased had a knife in his hand in a position to strike; that he struck with the knife, cracking the windshield; that he got out of the car and deceased continued to approach him; that he fired several shots. At this point appellant testified as follows: "I really didn't want to hurt him, but I knew he would kill me; he had made several attacks already on me with a knife; and I pulled my gun and started shooting."

Witnesses for the appellant testified that they found a knife under the body of the deceased immediately after he fell to the street. One witness said he saw the knife in deceased's hand at the time of the fatal encounter. Two or three witnesses for the appellant testified that deceased

had threatened to kill the appellant. Many witnesses testified that the appellant's general reputation for being peaceable and law-abiding was good.

There are exceptions to the charge of the court, particularly that part submitting the law of self-defense. We fail to perceive any fault in the charge which is pointed out in the exceptions addressed to it. So far as we are able to judge, the charge sufficiently presented the issues to the jury.

In the statute (article 670, C. C. P.), it is declared that the sheriff shall provide a suitable room for the deliberation of the jury and supply them with such necessary food and lodging as he can obtain.

In article 671, C. C. P., it is declared: "No person shall be permitted to be with a jury while they are deliberating upon a case, nor be permitted to converse with a juror after he has been impaneled, except in the presence and by the permission of the court, or except in a case of misdemeanor where the jury have been permitted by the court to separate. No person shall be permitted to converse with the juror about the case on trial."

Article 672, C. C. P., reads as follows: "Any juror or other person violating the preceding article shall be punished for contempt of court by fine not exceeding one hundred dollars."

By article 673, C. C. P., it is made the duty of the officer in charge of the jury to keep them together and prevent intercourse with any other person.

From the testimony of the deputy sheriff in charge of the jury, the following, in substance, is shown: Aftter the impanelment of the jury, and after the testimony had begun and before it was closed, the jury was taken to a barber shop by the deputy sheriff. In the shop were five barbers and one bootblack. A number of the jurors were shaved. Five of them occupied chairs at one time. Each was served by a barber at the same time. Conversations were had between the jurors and the barbers shaving them. At least ten jurors were in conversation with one or more barbers at different times. Quoting the witness: "I don't know what they talked about. * * * Just one man got a shine."

There were two ladies in the barber shop. The jurors did not talk to the ladies, but talked to the barbers. The witness said further: "While all five men were in the barber chairs, I don't know whether I heard all the conversations; they were kinder talking among themselves—just a general discussion. It didn't seem that any one was singled out, but they were just talking back and forth among the jurors."

The deputy sheriff had permission of the court to take the jury to the barber shop. While the jurors were in the barber shop the sheriff came. From the witness we quote: "I was standing there in and among them all the time and never left the barber shop. * * * The barber shop

was about sixteen feet wide; and about thirty feet from the front to the partition."

The conversation was in an ordinary tone, and the witness thought it could be heard from the front chair to the back chair. He said he thought he heard all of the conversation that went on. Before entering the barbershop the jurors were instructed not to discuss the case with the barbers. The witness thought he heard all the conversation, could have heard all the conversation and tried to hear all of it, but he would not say that he did hear all that was said between the different men. He would not say that he understood everything that was said, but believed he would have known the "run" of the conversation if it was had in an ordinary tone of voice.

The language of Judge Lattimore in the case of Mauney v. State, 85 Texas Crim. Rep., 184, see page 192, 210 S. W., 959, 962, seems pertinent to the facts in hand: "Not only should the appearance of evil be avoided by strict observance of this statutory rule forbidding communications with the jury when the court is not present, but the further fact is true that human nature is frail and prone to excuse itself; and it is easily possible to conceive a case where the party conversing with a juror, as well as the juror himself, fearful of punishment for contempt, might not remember all that passed at such conversations, and might deny mention of the case between them by virtue of a convenient memory. We think the rule in cases of a violation of the provisions of article 748, ought to be that injury in such case is presumed unless the contrary is made to appear to the satisfaction of the court; the trial court primarily, and ultimately this court. Any presumption can be overcome by evidence, and in such case of presumptive injury the burden ought to be on the state to satisfy the court that no injury has resulted from such violation of the statute."

In the present instance, more than one of the statutory provisions mentioned above were disregarded. Under such circumstances, it has been held with uniformity that the presumption of injury obtains, and, unless overcome by evidence to the contrary, a reversal is demanded.

In the case of Toussaint v. State, 92 Texas Crim. Rep., 379, 244 S. W., 514, 517, it was said: "Separation of the jury after it has been sworn and impaneled is prohibited save when the jurors separating are in charge of an officer, and this is only permitted when the court gives express permission and the parties consent. These statutes have been uniformly construed mandatory. Mauney v. State, 85 Texas Crim. Rep., 184, 210 S. W., 959; Gilbert v. State, 85 Texas Crim. Rep., 597, 215 S. W., 106; Cockrell v. State, 85 Texas Crim. Rep., 326, 211 S. W., 939; Newman v. State, 91 Texas Crim. Rep., 559, 240 S. W., 312; Early v. State, 51 Texas Crim. Rep., 391, 103 S. W., 868, 123 Am. St. Rep., 889; Parshall v. State, 62 Texas Crim. Rep., 177, 138 S. W., 759; Logan v. State, 66 Texas Crim. Rep., 512, 148 S. W., 713; Wood v.

State, 84 Texas Crim. Rep., 191, 206 S. W., 349; McDougal v. State, 81 Texas Crim. Rep., 191, 194 S. W., 944, L. R. A., 1917 E, 930; Mitchell v. State, 36 Texas Crim. Rep., 318, 33 S. W., 367, 36 S. W., 456; Campbell v. State, 37 Texas Crim. Rep., 572, 40 S. W., 282; McWilliams v. State, 32 Texas Crim. Rep., 269, 22 S. W., 970; Dibbles v. State, 89 Texas Crim. Rep., 427, 231 S. W., 768."

In instances like the present, where jurors are put in a position that they must mingle with the public, it is difficult to overcome the presumption of injury, but, when raised on motion for new trial, there should be no failure to use available testimony to negative injury. See Gilliam v. State, 107 Texas Crim. Rep., 319, 296 S. W., 600. The record in the present instance discloses that there was little effort to overcome the presumption of injury. None of the jurors were called to disclaim the injurious conversation. None of the persons who conversed with them were interrogated with reference to the nature of the conversation. Reliance is had alone upon the testimony of the deputy sheriff who was present. The sheriff was also present, but was not called as a witness in behalf of the state. It is thought that the verdict in the present instance cannot be sustained without overthrowing the safeguards recognized as essential to give assurance that the verdict of the jury reflects the judgment of the jurors unaffected by influences of an improper character.

Because of the error mentioned, the motion for rehearing is granted, the order of affirmance is set aside, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

ON STATE'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—In its motion for rehearing, the state complains of one statement in our original opinion which is claimed to be inaccurate. The statement criticized has been eliminated from the opinion.

The state recognized that, when a situation is permitted to occur such as is shown by the present record, the presumption of injury arises, but takes the position that the state discharged the burden of overcoming such presumption through the testimony alone of the deputy sheriff in charge of the jury. We acquit the officer of any wrong. He was doing to the best of his ability what the court had authorized him to do. It was humanly impossible for one man to know what was said by all the parties under the circumstances shown in the present case. Such questions can be kept out of a case much easier than they can be eliminated when once in. It is regrettable when such situations arise. It is not necessary to again refer to authorities. Many will be found collated in the excerpt from the opinion in Toussaint v. State, 92 Texas Crim. Rep., 379, 244 S. W., 514, quoted in our original opinion.

Believing the conclusion heretofore announced to be correct, the motion for rehearing is overruled.

*Overruled.*