**Daniel Bellarion HORST, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–87–0174–CR.**

Court of Appeals of Texas,
Amarillo.

Aug. 4, 1988.

Jeff Blackburn, Amarillo, for appellant.

Bill Baumann, Co. Atty., Amarillo, Dale Elliott and Sonya Letson, Asst. Co. Attys., for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

Appellant Daniel Bellarion Horst appeals his conviction for murder and the jury-assessed punishment of ninety-nine years

confinement in the Texas Department of Corrections. In five points, appellant argues that the trial court erred in (1) amending, over appellant's objections, the indictment; (2) overruling appellant's motion for mistrial because of the unauthorized communication with jurors Jennings, Dunn and Tarter; and (3) implicitly finding that there was no reasonable probability that an informant could give testimony necessary to a fair determination of appellant's guilt or innocence. We affirm the judgment of conviction.

In his first point, appellant argues that the trial court erred in amending the indictment in this case over his objections. Appellant was originally indicted for capital murder as follows:

> ... did then and there knowingly and intentionally cause the death of an individual, Anthony Joseph Heath, by shooting him with a firearm, to-wit: a handgun, and the said defendant was then and there in the course of committing and attempting to commit the offense of kidnapping of Anthony Joseph Heath, ....

When the State moved to amend the indictment to charge the offense of murder, appellant objected, both orally and in writing. The court allowed amendment of the indictment to read as follows:

> ... did then and there knowingly and intentionally cause the death of an individual, Anthony Joseph Heath, by shooting him with a firearm, ....

Article 28.10(c), Texas Code of Criminal Procedure Annotated (Vernon Pamph.Supp. 1988) provides:

> An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

Appellant argues that capital murder and murder are "different" offenses under article 28.10(c) and that the trial court erred in allowing the State to amend the indictment over his objection.

Murder is a lesser included offense of capital murder and the State may reduce the charge to that offense. *Ex parte McClelland*, 588 S.W.2d 957, 959 (Tex. Crim.App.1979); *Robinson v. State*, 656 S.W.2d 111, 114 (Tex.App.—San Antonio 1983, pet. ref'd).

In *Behrend v. State*, 729 S.W.2d 717, 722 (Tex.Crim.App.1987), the Court discussed whether capital murder and murder are "different" offenses for purposes of the Speedy Trial Act. The first indictment alleged the capital murder of the victim by suffocation with chloroform and the second indictment alleged murder by "manner and means unknown." Although the two offenses differed in that the first required greater proof than the second, the Court found that both offenses arose from the same transaction, *i.e.*, killing the victim. The Court, therefore, found that the two indictments were for the same offense for purposes of the Speedy Trial Act. *Id.* at 723. Likewise, the case at bar involves removal of language from the first indictment which negates the necessity for proof on certain elements. Otherwise, the two offenses arise from the same transaction, *i.e.*, the killing of the victim.

Appellant relies on *Thomas v. State*, 701 S.W.2d 653 (Tex.Crim.App.1985) and *Steambarge v. State*, 440 S.W.2d 68 (Tex. Crim.App.1969) for the proposition that murder and capital murder are different offenses. We find these cases inapposite.

*Thomas v. State*, 701 S.W.2d at 656 stands for the proposition that a defendant in a capital murder prosecution is not entitled to a charge on the lesser included offense of murder unless there is some evidence indicating that the defendant, if guilty, is only guilty of murder. No question was raised as to amendment of the indictment or "different" offenses.

In *Steambarge v. State*, 440 S.W.2d at 70, the Court discussed the duplicity of joinder of two or more "distinct" offenses in the same count, or the joinder in the same count of two or more phrases of the same offense where the punishment is different. The case at bar does not involve a joinder issue.

■ The trial court did not err in overruling appellant's objections and allowing the State to amend the indictment to charge the lesser included offense of murder instead of capital murder. Appellant's first point is overruled.

In his second, third and fourth points, appellant complains that the trial court erred in overruling appellant's motion for a mistrial because of the unauthorized communication with jurors Jennings, Dunn and Tarter. The three jurors involved were questioned outside the presence of the other jurors concerning the event by both counsel and the court.

Michael Jennings testified that after he parked his car in the parking lot, an unidentified black man, who was "hanging around those busses [sic] by the bus station," spoke out loudly "If you put any of those Bandidos in jail, I'll kill you, son of a bitch." Jennings stated that he was not certain the man was talking to him, and did not acknowledge the statement. Jennings said he was not wearing his juror badge at the time. He stated that when he reached the steps of the courthouse, he turned to look back at the man, "and he was waving his arms," and Jennings said he was under the impression that "he was probably a little bit off mentally." He stated that he repeated the story to two jurors, who he described and were later identified as Dunn and Tarter. Tarter and Dunn testified to the same story that Jennings related to the court, including Jennings' observation that the man was "off."

Each of the three jurors testified that his deliberations would not be affected in any way by the event and that each did not have a bias or prejudice against the defendant or in favor of the State by virtue of that event. Jennings admitted that he probably would not be able to put the event out of his mind, but that it would not obstruct his thinking or hinder his position to make a sound decision because it did not bother him at the time.

It has long been established that the purity and impartiality of a jury trying a criminal case is one of the foundation stones of our system of criminal jurisprudence. *See Toussaint v. State*, 92 Tex. Crim. 374, 244 S.W. 514 (1922). As part of the effort to protect that impartiality, since the earliest days of our State it has been a tenet that no trial juror should have unauthorized communications or conversations with any person. The statutes prohibiting such contacts have been consistent in their terminology. The present expression of that tenet, article 36.22, Texas Code of Criminal Procedure Annotated (Vernon 1981) provides that:

> No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court.

■ The rule is a strict one and harm is presumed when an unauthorized person converses with a juror. *Mayo v. State*, 708 S.W.2d 854, 856 (Tex.Crim.App.1986). This is true even if the exchange does not rise to the level of a conversation or discussion of the specifics of a given case. *McIntire v. State*, 698 S.W.2d 652, 659 (Tex.Crim.App. 1985). However, the rule is not absolute and the presumption is rebuttable. A new trial is not required unless there has been injury to the accused. *Thomas v. State*, 699 S.W.2d 845, 853 (Tex.Crim.App.1985). The burden is, of course, upon the State to overcome the presumption that such harm did occur. *Cole v. State*, 157 Tex.Crim. 469, 250 S.W.2d 201, 206 (1952).

■ Based upon the verity of the above principles, appellant postulates that the presumption of harm arose in this case because of the ex parte exclamation of the bystander, which, he argues, is within the bar of article 36.22. Moreover, he reasons, since this is the case, the presumption of injury can only be overcome by testimony other than that of the affected jurors. In support of the proposition that such other testimony is required, he relies upon the Court pronouncements in *West v. State*, 116 Tex.Crim. 468, 34 S.W.2d 253, 261 (1930) and *Toussaint v. State*, 244 S.W. at 517–18. Since no testimony other than that of the jurors was presented in this case, he contends that reversal is required. We disagree with this conclusion.

In *Toussaint*, jurors had, on several occasions, engaged in conversations with female prisoners, who were, in the language of the Court, of "questionable character," and another juror had "engaged in a conversation with his wife." Moreover, the Court noted that "there is evidence that the other jurors engaged in conversations with other persons" and that during the trial, "it was a common practice among the jurors to engage in telephone conversations with parties outside." It was against this background that the Court discussed the presumption of harm and the rebuttal of that presumption. Specifically, the Court said that if a juror "holds the conversation against the mandates of the statute, then the rule which requires that the person with whom he talked be presented to rebut the presumption of injury is neither so onerous nor unjust as to justify its disregard." 244 S.W. at 517. The reason for the rule, the Court said, was "to guard against the evil that would follow the impaneling of a dishonest or prejudiced juror. Such a juror, being guilty of conduct violative of the statutory provisions mentioned, would be the last to reveal it." *Id.* The Court then went on to say that "the burden was upon the state to meet the presumption of injury by the introduction of such testimony as was available to it." *Id.* at 518.

Citing *Toussaint* as its only authority, the *West* Court stated the rule as "where a juror is shown to have conversed with an outsider it is the announcement of the decisions that the person with whom he talked must be presented to rebut the presumption of injury, the decisions being to the effect that the testimony of the juror alone is not sufficient." *West v. State,* 34 S.W.2d at 261. *See also Chappell v. State,* 121 Tex.Crim. 293, 50 S.W.2d 327, 329 (1932).

■ The articulation of the rule in *Pearson v. State,* 145 Tex.Crim. 87, 165 S.W.2d 725 (1942) (on motion for rehearing) clarifies the situations in which the rule is applicable. In that case the Court said:

> ... [I]t is now the settled rule that, where it is made to appear that a conversation has occurred between a member of the jury and some person other than as authorized under the provisions of said statute, the State must show that the accused was not injured or prejudiced thereby.

*Id.* at 729. Significantly, the Court went on to say that the term "to · converse with a juror" as used in the analogous statute in force at that time, "is construed to mean something more than the mere salutations or ex parte statements." *Id.* at 730. A reasonable interpretation of the *West* and *Toussaint* comments would be that in situations where a juror or jurors have actually engaged in unauthorized conversations, the testimony of *all* participants is necessary to enable the court to determine whether injury or prejudice occurred.

■ However, in situations such as in the instant one, to say that testimony other than that of the jurors is required would be to require an automatic reversal in every case where such a bizarre act occurs. We do not think that is required. The proper inquiry, where no actual conversation took place, is as to the effect of the incident upon a juror's ability to judge a case impartially. That inquiry must, of necessity, require an interrogation of the juror. The answers and demeanor of the juror must be considered by a careful trial court in making its decision and its decision must, of necessity, be based upon those factors, considered in light of the surrounding circumstances.

Our conviction that the trial court did not err in basing his decision upon the testimony of the jurors is strengthened by the decisions in such cases as *Thomas v. State,* 699 S.W.2d at 845; *Romo v. State,* 631 S.W.2d 504, 506 (Tex.Crim.App.1982); *McMahon v. State,* 582 S.W.2d 786, 793 (Tex.Crim.App.1978), *cert. denied,* 444 U.S. 919, 100 S.Ct. 238, 62 L.Ed.2d 175 (1979); *Stein v. State,* 514 S.W.2d 927, 933 (Tex.Crim.App.1974); *Blackwell v. State,* 510 S.W.2d 952, 955 (Tex.Crim.App.1974); *Palasota v. State,* 460 S.W.2d 137, 141 (Tex.Crim.App.1970); and *Mize v. State,* 754 S.W.2d 732, 739 (Tex.App.—Corpus Christi 1988, no pet.). In each of those cases it was

held that statements of jurors, as elicited by the State and the trial court, were sufficient to establish a lack of harm and justify affirmance of those cases. Likewise, the jurors' testimony in this case, in light of the circumstances of the occurrence, was sufficient to justify the ruling of the trial court. Appellant's second, third and fourth points are overruled.

In his fifth point, appellant contends the trial court erred in denying his request that the State disclose the name of an informant. The State concedes that appellant sought and was granted a discovery motion which included a requirement that he be furnished any information which tended to connect someone other than the defendant with the commission of the offense charged, including statements of witnesses.

Greg Soltis is an Amarillo policeman attached to the Special Crimes Unit who testified for the State. During the trial, after Soltis' direct testimony and the evening before his cross-examination, appellant was furnished copies of Soltis' investigative reports. In one of those reports was contained the following statement:

> During our conference Mr. Lee (a Drug Enforcement Agent) advised that he has a confidential informant who had advised him that in August of 1984 he was at the Sturgis Run, a motorcycle gathering, when he overheard (James Thomas Atkins) ["Tucker"] speaking with (Little Joe Benevities). The informant advised they were discussing the problems with (Marilynne Horst) and he overheard Atkins aka Tucker, state, "Don't worry about Marilynne, when I get back to Amarillo I'll take care of that problem." Mr. Lee advised that when the time permits the confidential informant will give us an affidavit concerning the conversation he overheard at the Sturgis Run.

The State also concedes that the information contained in Officer Soltis' report was inadvertently omitted from evidence furnished appellant prior to trial. Parenthetically, we note that there is nothing in the record to support a conclusion that this omission was deliberate.

Appellant points out that he started developing evidence pointing to Tucker as the perpetrator of the crime at his first opportunity and continued to attempt to develop that theory throughout the trial. Therefore, he argues, the act of the court deprived him of the opportunity to develop evidence from the informant that may have been relevant and helpful to his defense.

Texas Rule of Criminal Evidence 508(c)(2) provides:

> (2) Testimony on merits. If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issues of guilt, innocence and the public entity invokes the privilege, the judge shall give the public entity an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony. The showing will ordinarily be in the form of affidavits, but the judge may direct that testimony be taken if he finds that the matter cannot be resolved satisfactorily upon affidavit. If the judge finds that there is a reasonable probability that the informer can give the testimony, and the public entity elects not to disclose his identity, the judge on motion of the defendant shall dismiss the charges to which the testimony would relate and the judge may do so on his own motion. . . .

This rule, together with the remainder of the Texas Rules of Criminal Evidence, became effective September 1, 1986. Prior to the adoption of this rule, it was well established that the disclosure of a confidential informant was not required unless:

> (1) the informant participated in the offense;
> (2) was present at the time of the offense or arrest; or
> (3) was otherwise shown to be a material witness to the transaction or as to whether appellant knowingly committed the act charged.

*Rodriguez v. State*, 614 S.W.2d 448, 449 (Tex.Crim.App.1981). Moreover, the Court had held that evidence, not conjecture or speculation, was required to make the req-

uisite showing that the identity of the informant must be revealed. *Gaffney v. State*, 575 S.W.2d 537, 542 (Tex.Crim.App. 1978). The requirement of the rule that the evidence or other showing must show the informer may be able to give testimony necessary to a fair determination of the issues of guilt, etc. must be construed in the light of this well established doctrine. Parenthetically, we note there is no evidence that the informer here in question met any one of the requirements enumerated in *Rodriguez v. State*, 614 S.W.2d at 449.

In asserting that error was shown, appellant relies upon *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *Bernard v. State*, 566 S.W.2d 575 (Tex.Crim.App.1978); and *Andrew v. State*, 558 S.W.2d 876 (Tex.Crim.App.1977) (on motion for rehearing). Those cases are distinguishable.

In *Roviaro*, it was shown that "the Government's informer was the sole participant, other than the accused, in the transaction charged." 353 U.S. at 64, 77 S.Ct. at 630. In *Bernard*, it was shown by evidence from the State's witness that the informant "initiated the arrangements for the delivery of heroin." 566 S.W.2d at 578. Likewise, in *Andrew*, the evidence showed that the informant was a material witness to the occurrence in question who actually saw the three fugitives running from the scene of the robbery in question. 558 S.W. 2d at 879.

■ All of the above informants were discoverable because of their close nexus with the crime. The informant in the case at bar, however, only "overheard" a man tell another that he would "take care of that problem" with Marilynne Horst, who was killed at the same time as the deceased in this case. Under these circumstances, and under this record, the trial court did not reversibly err in refusing to require the State or in attempting to require a separate federal agency to reveal the informant's identity. *See Rodriguez v. State*, 614 S.W. 2d at 449; *Etchieson v. State*, 574 S.W.2d 753, 757 (Tex.Crim.App.1978), *cert. denied,*

440 U.S. 902, 99 S.Ct. 1210, 59 L.Ed.2d 452 (1979). Appellant's fifth point is overruled.

At submission, and during oral argument, on July 18 of this year, appellant referred to the very recent case of *Zani v. State*, 758 S.W.2d 233 (Tex.Crim.App. 1988). Because post-hypnotic testimony was received in this case, and because the decision was so recent in nature, appellant requested leave to file a supplemental brief presenting a point of error dealing with the admission of this testimony.

In response to that request, this Court allowed appellant a period of ten days within which to file a motion for leave to file such a brief, together with the brief. The State was then to be given a period of ten days within which to file an opposition to the motion and, concomitantly therewith, to file its supplemental brief to be considered by us if appellant's motion was granted. All of the above items have now been received by us within the requisite time frame.

After due consideration and because of the proximity of the *Zani* decision to the submission of this case, we have granted appellant's motion and will consider his supplemental brief and its point of error. *See* Tex.R.App.P. 74(*o*) and (p). In that additional point of error, appellant posits error by the trial court in overruling his motion to strike the post-hypnotic testimony of Becky McMillan.

The question before the *Zani* Court was, in its words, "whatever hypnotically-induced testimony is admissible in Texas." In arriving at the answer to that question, the Court made a thorough and exhaustive study of the state of the law in regard to hypnosis, its effect upon witness testimony, and the varying rules as to the admissibility of that type of evidence. The conclusion of the Court was:

> If, after consideration of the totality of the circumstances, the trial court should find by clear and convincing evidence that hypnosis neither rendered the witness' posthypnotic memory untrustworthy nor substantially impaired the

ability of the opponent fairly to test the witness' recall by cross-examination, he may admit the testimony.

*Zani v. State*, 758 S.W.2d at 244. Having stated the test, and determined that the record was sufficient for an appellate determination of the admissibility of the questioned testimony, the cause was remanded to the Court of Appeals for its assessment of admissibility under that test.

Likewise, we find the instant record is sufficient for our determination as to whether McMillan's testimony was properly admitted. The question, then, for our determination is whether there is sufficient clear and convincing evidence to support the admission of that testimony. That standard is an intermediate one, falling between the preponderance of the evidence standard and the reasonable doubt standard. It has been defined as that degree of proof sufficient to produce in the trial judge's mind a firm belief as to the truth of the allegation sought to be established. *See Hankins v. State*, 646 S.W.2d 191, 203 n. 6 (Tex.Crim.App.1983) (Miller, J. concurring and dissenting); *see also State v. Addington*, 588 S.W.2d 569, 570 (Tex.1979). .

On March 13, 1985, Officer Clay Duke interviewed Ms. McMillan, who was the first grade teacher of appellant's child, Danielle. At that time, he had a "fairly detailed" conversation with her described by him in a report he filled out the next day and which appears in the record. In that interview, Ms. McMillan told Duke that the little girl was brought to school by appellant. Later, in an attempt characterized by the officer as one in which he hoped to get a better description of the clothes worn by appellant and the vehicle driven by him at that time, he arranged for Ms. McMillan to be hypnotized. This was done on March 20, 1985. According to the officer, the attempt was unsuccessful and they obtained no new information as a result of the session.

Appellant points out that in her trial testimony, Ms. McMillan said that (1) appellant was "out of breath" when he brought his daughter into school that day; (2) that "Tucker" had brought the child to school

before; and (3) that when appellant's daughter was taken from school that day, her school supplies were left behind. Since the initial statement taken by Officer Duke does not include any reference to these particulars, appellant reasons that they must be the result of hypnotically enhanced recollection and, therefore, suspect. The last two references are important, he says, since the reference to Tucker is important to the State's theory that appellant may have been guilty as a party with Tucker, and the fact that the school supplies were left behind is indicative of flight.

Ms. McMillan had completed her direct testimony and appellant had begun his cross-examination when the following dialogue ensued:

> MR. BLACKBURN: Judge, we need to examine these statements a little bit before we can resume cross-examination, if the Court please.

> Your Honor, could counsel approach the bench for a moment?

> THE COURT: You may.

> (Whereupon, counsel approached the bench, and the following proceedings were had presumably outside the hearing of the jury:)

> MR. BLACKBURN: We have a real problem here. We just read the report of a hypnotist. Apparently, this woman's testimony has been hypnotically enhanced, and I think we need to get the jury—

> MR. BAUMANN: I told you that.

> MR. BLACKBURN: Just hang on. You told me that she was hypnotized and that's all that was in this report. I didn't realize the testimony she gave here was hypnotically enhanced, and I think we need to take this up outside the presence of the jury because I think we have a valid ground to suppress on this, Your Honor.

> MR. BAUMANN: What does that mean?

> MR. BLACKBURN: That means that hypnotically enhanced testimony is not admissible and we need to explore whether or not the testimony she gave in the

trial here was hypnotically induced relating to the statement—

THE COURT: I don't have any idea what you're saying. You're going to have to talk louder and slower.

MR. BLACKBURN: Judge, here's the problem. Her name was given to us in response to a pre-trial motion that we filed, that apparently some sort of hypnosis had been conducted on her. She testified. Now, we've just been furnished a report that apparently deals with her testimony, two statements, at least, or one report from the hypnotist, and what it tells us is that apparently the subject matter of her testimony was hypnotically enhanced or induced. I just think it's relevant now for us to make a motion to strike all that testimony, Judge, and I think we need to explore it to see if it really was or if there's some connection between the two, because if it's—I think there's a real problem with its admissibility.

THE COURT: I'll let you develop the record outside the presence of the jury, and then, after you develop the testimony or the circumstances of the hypnotic procedure, then I'll need some authorities at 8:30 Monday morning before I can make any ruling on it.

MR. BLACKBURN: That's fine, Judge. I think I would be in grave danger of waiving my own position on the deal if I tried to proceed with any cross-examination of her before I can get this preliminary matter decided.

The jury was excused and appellant interrogated Ms. McMillan. In that examination, the witness testified about the mechanics of her hypnosis and that the hypnotist had her recall all the events of the day. She said she did not visit with the police after the session, but talked to the prosecutor and his staff in preparation for her testimony. After an overnight recess, and also out of the presence of the jury, Officer Duke testified about his first interview and the reasons we have set out above as to why he set up the hypnosis session. The concluding question and answer upon his cross-examination were:

Q. So you wanted to enhance it or make it stronger, make it better, get more information; isn't that right? Yes or no? Now, you can answer that one yes or no, okay?

A. Okay. I will answer it yes. ·

It was at this point that appellant actually articulated his objection to Ms. McMillan's testimony on the basis that it was hypnotically enhanced.

■ It is well established that timely objection is required in order to preserve error regarding the alleged improper admission of evidence. *See Girndt v. State*, 623 S.W.2d 930, 934 (Tex.Crim.App.1981); *Turner v. State*, 614 S.W.2d 144, 147 (Tex. Crim.App.1981). In order to be considered timely, an objection must be made as soon as the ground of the objection becomes apparent. *Granviel v. State*, 552 S.W.2d 107, 121 (Tex.Crim.App.1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977); *Guzman v. State*, 521 S.W.2d 267, 269 (Tex.Crim.App.1975). Although appellant had been notified that Ms. McMillan had been hypnotized prior to her testimony, he did not object until she had already completed her testimony about all of the challenged matters. That being the case, appellant's objection was not timely. *Thompson v. State*, 691 S.W.2d 627, 635 (Tex.Crim.App.1984); *Turner v. State*, 614 S.W.2d at 147.

■ Moreover, even assuming the objection was timely made, we find no error in its admission. We have compared McMillan's pre-hypnosis statement with her trial testimony. The similarities are so significant as to justify the trial court's evident conclusion that the hypnosis did not render the witness's post-hypnotic memory untrustworthy or to substantially impair appellant's ability to test Ms. McMillan's recall by cross-examination. Appellant's supplemental point is overruled.

All of appellant's points having been overruled and, there being no reversible error, the judgment of conviction is affirmed.