TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00017-CR






Lorenzo Lewis, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0944940, HONORABLE JON N. WISSER, JUDGE PRESIDING






 Appellant Lorenzo Lewis was convicted of the offense of aggravated robbery with a deadly
weapon. See Tex. Penal Code Ann. § 29.03 (West 1994). The punishment assessed by the trial court
was imprisonment for twenty-eight years. Appellant appeals presenting four points of error in which he
asserts that (1) the evidence is legally and factually insufficient to support the jury's verdict; (2) unlawfully
seized evidence was erroneously admitted; (3) the trial court erroneously failed to declare a mistrial when
a juror did not return for jury duty on the third day of trial; and (4) the trial court erroneously refused to
grant a mistrial when a prosecutor improperly communicated with a juror. We will overrule appellant's
points of error and affirm the trial court's judgment.

 In his first point of error, appellant asserts that the evidence is legally and factually
insufficient to support the jury's verdict. Appellant argues: "not one witness identified the appellant as the
perpetrator of the instant offense. Further, no one gave testimony from which a reasonable trier of fact
could determine that the person who committed the instant offense used a deadly weapon."

 At about 2:00 p.m. on January 26, 1994, Dave Rundell, an employee of The Money Box,
a check cashing business, was robbed by a lone gunman. Shortly before the robbery, Rundell, the only
employee in the store, received a telephone call that he thought was from The Money Box office. The
caller told Rundell to watch for the delivery of an important package. Soon thereafter, a man entered the
store with packages and told Rundell to admit him to the locked area of the store. The man was wearing
a hat with "Federal Express" written across the front. After three customers left the store and the man was
in the secured area of the store with Rundell, he pulled a small pistol from his pocket and ordered Rundell
not to look at him and to lie down on the floor. The man, who was wearing latex gloves, went through the
cash drawers and took over fifty-five thousand dollars. The robber kept the "gun" or "pistol" pointed at
Rundell and threatened to kill him several times. The robber told Rundell he didn't want to kill someone
so young for so little money. Rundell testified that the gun in the robber's hand looked "like something that
was capable of killing him," and that he feared for his life during the robbery. Rundell was not asked at trial
to identify appellant. On cross-examination, Rundell testified that he believed the robber's gun was real,
but that he "couldn't say for sure."

 Two of the three customers who were in the store when the robber entered testified. 
Marilyn Phillips, one of the customers, thought the fact that the man delivering the packages was wearing
latex gloves was unusual. Phillips later viewed a photographic display of six men. She did not make a
positive identification, but she thought the "number two" man looked the most like the man she had seen
in The Money Box. Sergeant Jimmie Brown who conducted the photographic show-up testified that the
appellant was the "number two" man in the display viewed by Phillips. Phillips was not asked to make an
in-court identification of appellant. Ophelia Knox, another customer, testified that she saw a man enter the
store and thought he was a delivery person by the way he was dressed. When Knox and her husband left
the store they observed the "delivery man" take some papers from a white four-door Geo car that had a
paper about "eight by twelve, maybe a little longer" attached to the back window. She looked for a license
plate but did not see one. She viewed two photographic show-ups for Sergeant Brown, but while testifying
she became confused about the identification she had made. Sergeant Brown testified that when Knox
viewed the photographic display she identified appellant's photograph saying it "fitted more the person she
saw in the store, in The Money Box store that day." Knox was not asked to make an in-court identification
of appellant.

 Fred Brown, an automobile salesman, testified that on the day of the offense the appellant,
whom he knew by name, came into the showroom and was allowed to take a white four-door Geo sedan
for a test drive. Appellant had the Geo from around 1:00 p.m. until 3:00 p.m. The Geo had a dealer's
sticker on the back window.

 Donna Ray Risley, manager of The Money Box, testified that Rundell called her after he
was robbed and she drove immediately to the store, arriving before the police officers. She saw a note on
a piece of paper attached to the door which read "TEMPORARily Closed!! until." She assumed Rundell
had placed the note on the door, but when she found that he had not, she went through the trash and found
the note. She gave the note to a police officer.

 In connection with another offense six months later, officers obtained a search warrant to
search appellant's apartment and truck. While serving that search warrant, the officers found a note in
appellant's truck that read "TEMPORARily CLOSED COME BACk." This note and the one which had
been found on the door of The Money Box store were compared with appellant's handwriting exemplar. 
The questioned documents expert, who made the comparison, testified that in his opinion appellant had
written both notes. After appellant's arrest he was shown the note found on The Money Box's door, but
appellant thought it was the note that he knew had been taken from his truck. Appellant identified the note
as his and gave police an explanation about the note found in his truck.

 The trial court admitted evidence of an extraneous offense which closely resembled the
robbery at The Money Box. Sonia Venegas and Suzanne Suniga, clerks at Austin Check Cashing, testified
that on August 16, 1994, a man dressed as a United States Postal Service employee attempted to gain
access to the secured area of the store where they were working to make a delivery. When the clerks saw
the latex gloves the man wore, they refused to admit him and he left. Both clerks identified appellant as the
man who had attempted to gain entrance to the secured area of the store. These witnesses were shown
a United States Postal Service visor, latex gloves, and two boxes which had been seized from appellant's
truck. The witnesses testified these items looked like those used by appellant in his attempted delivery to
the Austin Check Cashing store.

 Witnesses from University Federal Credit Union and Austin Telco Credit Union identified
records of appellant's accounts that showed substantial money transactions following the robbery at The
Money Box.

 Waymond Wesley, appellant's friend, mentor, and spiritual advisor, testified that he and
appellant had been on the same university football team. Wesley had counseled appellant about spiritual
matters and about appellant's marital problems. Wesley, a high school teacher and assistant coach, lived
in the same apartment complex as appellant. Soon after The Money Box robbery, appellant called Wesley
who was at home grading papers. Appellant told Wesley he was in urgent need of his help and asked
Wesley to come to his apartment. Wesley assumed appellant, who had previously been hospitalized with
a heart condition, was having a heart attack. Wesley rushed over to appellant's apartment and saw
appellant going back and forth from his truck to a dumpster into which he was throwing things. Appellant
told Wesley, "Oh, I need you to hold something. I need you to hold something for me." Appellant showed
Wesley a package he wanted Wesley to hold. Wesley did not see the contents of the package, but he
inferred from what appellant said that the package contained money. Appellant said that he had obtained
the package from "some guys" who put it in his truck. Wesley urged appellant, "Lorenzo, either you do
the right thing or I'm going to do the right thing. Either you're going to make a call to the authorities or I'm
going to do it." Appellant then threatened Wesley's life saying, "I'll pop a cap on you." Wesley continued
to urge appellant "to do the right thing." Wesley, who was nervous, became apprehensive about the
welfare of his two young children, and returned to his apartment. Wesley called police but did not reveal
his name. On the advice of the officer to whom he talked, Wesley called Crime Stoppers. Wesley then
had several conversations with officers and obtained some items including rubber gloves from the dumpster,
which he gave to an officer.

 Appellant offered the testimony of a Dallas attorney who testified he represented appellant
in a civil suit in which appellant received about a twelve-thousand-dollar settlement several months before
the Money Box robbery. Appellant also offered in evidence a toy pistol which was obtained by police
when they searched appellant's truck. Appellant did not testify and offered no other evidence.

 In reviewing the legal sufficiency of the evidence, the test is whether, after viewing the
evidence in the light most favorable to the prosecution, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319
(1979); Staley v. State, 887 S.W.2d 885, 888 (Tex. Crim. App. 1994); Moreno v. State, 755 S.W.2d
866, 867 (Tex. Crim. App. 1988). This standard of review is the same for both direct and circumstantial
evidence. Geesa v. State, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991); Mack v. State, 859 S.W.2d
526, 527 (Tex. App.--Houston [1st Dist.] 1993, no pet.). Although the eyewitnesses may not have
positively identified appellant as the robber at The Money Box store, the circumstantial evidence which we
have summarized is sufficient to support the jury's verdict. Appellant's specific contention that the State
failed to prove he used a deadly weapon in the commission of the offense is without merit. That appellant
had a toy pistol in his truck six months after the robbery did not require the jury to infer that it was the
instrument used in the robbery. Appellant argues that it was necessary for the State to prove beyond a
reasonable doubt that appellant used or exhibited a "device designed, made, or adapted to expel a
projectile through a barrel using energy generated by an explosion or burning substance." Appellant is
wrong. The use of a deadly weapon was alleged, and proof that a deadly weapon was used was an
essential element of the offense. See Tex. Penal Code Ann. § 29.03 (West 1989). Rundell testified that
appellant pointed a "pistol" or a "gun" at him and repeatedly threatened to kill him. Testimony using any
of the terms "gun," "pistol," or "revolver" is sufficient to authorize the jury to find that a deadly weapon was
used. Wright v. State, 591 S.W.2d 458, 459 (Tex. Crim. App. 1979). A "gun" is a firearm. Joseph v.
State, 681 S.W.2d 738, 739 (Tex. App.--Houston [14th Dist.] 1984, no pet.). A firearm is a deadly
weapon. Tex. Penal Code Ann. § 1.07(a)(17) (West 1994). Testimony that a "revolver" was used is
sufficient to prove the use of a deadly weapon. Gomez v. State, 685 S.W.2d 333, 336 (Tex. Crim. App.
1985). If a weapon is not recovered, corroboration of the complainant's description of the weapon by
expert testimony is not required. Id.; Porter v. State, 601 S.W.2d 721, 723 (Tex. Crim. App. 1980). 
We hold the evidence is legally sufficient to support the jury's verdict that appellant was guilty of aggravated
robbery with a deadly weapon.

 Legal sufficiency is a federal constitutional right and its determination is a matter of law. 
Factual sufficiency of the evidence in criminal cases is a state right, only recently announced. See Clewis
v. State, 922 S.W.2d 126, 134-36 (Tex. Crim. App. 1996); Stone v. State, 823 S.W.2d 375, 381 (Tex.
App.--Austin 1992, pet. ref'd untimely filed). Because appellant has combined and alleged both federal
and state claims of error in one point, and has not separately presented and argued factual insufficiency the
State claim need not be reviewed. Martinets v. State, 884 S.W.2d 185, 188-89 (Tex. App.--Austin
1994, no pet.). See also Heitman v. State, 815 S.W.2d 681, 690-91 n.2 (Tex. Crim. App. 1991);
Sterling v. State, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990); McCambridge v. State, 712 S.W.2d
499, 501 n.9 (Tex. Crim. App. 1986); Rosalez v. State, 875 S.W.2d 705, 718 (Tex. App.--Dallas 1993,
pet. ref'd). Nevertheless, we have examined the evidence under the factual sufficiency standard of Clewis
and Stone. When conducting a factual sufficiency review, we do not review the evidence in the light most
favorable to the verdict. Instead, we consider all of the evidence including the testimony of defense
witnesses and the existence of alternative hypotheses. Martinets, 884 S.W.2d at 188-89; Orona v. State,
836 S.W.2d 319, 321 (Tex. App.--Austin 1992, no pet.). We will set aside a verdict for factual
sufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Martinets, 884 S.W.2d at 189; Stone, 823 S.W.2d at 381. We have summarized the evidence
presented by the defense as well as the State. Appellant argues there is such a lack of identification
evidence and lack of proof that appellant used a deadly weapon that the jury's verdict is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. We disagree and conclude that
the evidence supporting the jury's verdict is not so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust. We hold the evidence is factually as well as legally sufficient and overrule
appellant's first point of error.

 In his second point of error, appellant insists that the trial court erred in overruling his
motion to suppress and in admitting the note that he claims was unlawfully seized from his truck. This was
the piece of paper that bore the words "TEMPORARily CLOSED COME BACk", which the expert
witness compared with appellant's handwritten exemplar and the note found on the door of The Money
Box store that read, "TEMPORARily Closed!! until." Six months after the instant offense was committed,
an armed robbery was committed at a Burger King restaurant. In connection with the offense at Burger
King, officers obtained a warrant authorizing the search of appellant's truck for personal property used by
the robber and obtained by the robber. While executing that warrant the officer saw the piece of paper
appellant says was unlawfully discovered and seized. Appellant contends that the affidavit presented to
the magistrate who issued the warrant failed to state facts showing probable cause for issuance of the
warrant.

 An affidavit for a search warrant must contain sufficient information to support the
magistrate's finding of probable cause. Keen v. State, 626 S.W.2d 309, 312 (Tex. Crim. App. 1981);
Mayfield v. State, 800 S.W.2d 932, 934 (Tex. App.--San Antonio 1990, no pet.). This is required by
federal and state constitutions and by state statutes. U.S. Const. amends. IV, XIV; Tex. Const. art. I, §
9; Tex. Code Crim. Proc. Ann. art. 18.01 (West Supp. 1997). A totality of the circumstances test is used
when evaluating the question of probable cause to issue a search warrant. Illinois v. Gates, 462 U.S. 213
(1983); Matamoros v. State, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995). Probable cause will be
found to exist if the affidavit for search warrant shows facts and circumstances within the affiant's
knowledge and of which the affiant has reasonably trustworthy information sufficient to warrant a person
of reasonable caution to believe that the specific offense has been committed, that the property to be
searched or items to be seized constitute evidence of an offense or evidence that a particular person
committed an offense, and the property or items are located at or on the person, place, or thing to be
searched. Tolentino v. State, 638 S.W.2d 499, 501 (Tex. Crim. App. 1982); Mayfield, 800 S.W.2d
at 934.

 Appellant argues that the affidavit is insufficient to show probable cause because it states
mere conclusions and does not state facts and circumstances showing how the affiant reached the
conclusions stated in the affidavit. Appellant sets out the portion of the affidavit which he says shows the
mere conclusions of the affiant. However, as the State has pointed out, appellant apparently overlooked
and failed to set out the portion of the affidavit that does state facts showing probable cause to support the
affiant's conclusions. The part of the affidavit which appellant omitted states:


 5. Affiant has probable cause for said belief by reason of the following facts, to-wit:


 On 08/17/94, Officer Timothy Kresta responded to a robbery at the Burger King,
located at 3427 Jefferson St., Austin, Travis County, Texas. The victim was identified as
Clayton Yantis.

 Yantis advised that suspect entered the business and ordered the victim to open
the safe. The suspect displayed a handgun and stated "Hurry up and open the safe and
nobody will get hurt." Suspect took a bank bag containing U.S. currency from the safe
and U.S. currency from the cash register and fled. Yantis described the suspect's clothing
as a purple and white vertical striped short sleeved t-shirt and a pair of black shorts. 
Yantis described the bank bag as a red Union National Bank deposit bag which contained
U.S. currency and deposit slips.

 Investigation developed a suspect and a photo line-up was prepared. The victim
was shown the photo line-up and identified Lorenzo Lewis as the person who robbed him
at gunpoint.

 At the time of Lewis's arrest approximately ten hours later, Lewis was at his
residence located at 1803 E. Anderson Ln. #1116, Austin, Travis County, Texas, and was
not wearing the clothing described by the witness when he robbed the business. Lewis did
not have in his immediate possession the weapon or items taken.

 Affiant spoke to Officer David Socha who informed affiant that Lee Boose, the
assistant manager of the apartment complex located at 1803 E. Anderson Lane, told
Officer Socha that Lorenzo Lewis lives in apartment #1116. Affiant has learned from
Texas Motor Vehicle Registration records that the vehicle bearing Texas license plate
0575WN is registered to Lorenzo Lewis.

 Wherefore, affiant asks for issuance of a warrant that will authorize him to search
suspected places and premises for said personal property and seize the same and to arrest
each said described and accused person.



 This part of the affidavit states facts and circumstances which show probable cause, upon
which the magistrate properly issued the search warrant. The piece of paper in appellant's truck was
lawfully discovered by the officers executing the warrant. The officers did not seize the piece of paper
when it was discovered. After its discovery, the officers obtained another search warrant specifically
authorizing the seizure of the note. Appellant's second point of error is overruled.

 In his third point of error, appellant asserts that the trial court erred "in failing to declare a
mistrial when one of the jurors failed to return for the third day of trial." On the morning of the third day of
the trial, the trial court stated for the record that he had received a telephone call from a man who said he
was the husband of the juror who had not returned for duty. The husband of the juror said the juror was
running a temperature of one hundred and two degrees, was bed-ridden and would be unable to return to
court to perform her jury service. The juror's husband told the judge his wife was "awfully sick" and he
did not think she would be able to serve on the jury the next day. The husband also told the judge that he
had walked one-half mile to use the telephone because their home phone was not operating. The judge
could not talk with the juror herself on the telephone. The juror lived twenty-five miles from the courthouse. 
On the second day of the trial, the juror had said she felt like she was "coming down with something," and
on that day the bailiff had noticed her apparently sleeping and being awakened by other jurors. The trial
court observed that prior to her absence this juror had brought cookies for the other jurors and acted as
if she were enjoying her jury service. The trial court felt this indicated the juror, if she were not
incapacitated, would have appeared to finish her jury duty. Defense counsel stated that in the absence of
medical testimony he did not believe the provisions of the statute had been met and he objected to
proceeding with eleven jurors, but counsel did not specifically ask for a mistrial. The trial court noted that
the court had a heavy docket the next week, an assignment to try a case in another county the following
week, and a preferential setting in a capital case the next week. The trial court also stated if the instant case
were delayed it would necessitate a recess exceeding three weeks, and alluded to several difficulties
concerning the case that might arise during that time. After restating the circumstances concerning the
juror's illness, the trial court ruled the juror was "disabled within the meaning of the definition of 36.29 due
to [her] physical illness." Article 36.29(a) provides:


Art. 36.29. If a juror becomes ill


 (a) Not less than twelve jurors can render and return a verdict in a felony case. 
It must be concurred in by each juror and signed by the foreman. . . . however, when
pending the trial of any felony case, one juror may die or be disabled from sitting at any
time before the charge of the court is read to the jury, the remainder of the jury shall have
the power to render the verdict; but when the verdict shall be rendered by less than the
whole number, it shall be signed by every member of the jury concurring in it.



Tex. Code Crim. Proc. Ann. art. 36.29(a) (West Supp. 1997).

 Appellant argues that the record does not support the trial court's conclusion that the juror
was disabled. In support of his argument, appellant cites Ramos v. State, 934 S.W.2d 358 (Tex. Crim.
App. 1996); Ex parte Little, 887 S.W.2d 62 (Tex. Crim. App. 1994); and White v. State, 618 S.W.2d
65 (Tex. Crim. App. 1981). In Ramos, a death penalty case, the trial court discharged a juror, over
objection, on the first day testimony was to be heard. This juror had been the first juror selected five weeks
before he was discharged. The Court of Criminal Appeals held that the juror was properly discharged as
disabled pursuant to Article 36.29 and not for economic reasons. The evidence showed that the juror said
he would be unable to concentrate due to pressures associated with moving and starting a new job. The
Court of Criminal Appeals held that the emotional pressures suffered by the juror justified the trial court's
decision to discharge the juror. The Court stated that it had defined the term "disabled" to mean any
condition that inhibits the juror from fully and fairly performing the functions of a juror. Griffin v. State,
486 S.W.2d 948, 951 (Tex. Crim. App. 1972). Ramos does not support appellant's argument because
in this case, like in Ramos, the trial court found the juror disabled.

 In Ex parte Little, a juror who had been impaneled and sworn as a juror failed to appear
the next morning for the trial. The trial court waited for three hours, the juror had not contacted the court,
and efforts to find the juror were unsuccessful. The court, over objection, declared a mistrial. The Court
of Criminal Appeals held that because there was no evidence the juror was disabled there was no manifest
necessity for a mistrial. The trial court's error in granting the mistrial after jeopardy had attached resulted
in Little's acquittal. In Little there was no evidence the juror was disabled, but in the present case there
is evidence supporting the trial court's ruling that the juror was disabled.

 In White, a juror, after the trial commenced, did not appear because he had been
hospitalized. The defense objected to the State's proof of the juror's disability because it was based on
hearsay evidence. The trial court continued the trial with eleven jurors but later allowed the State to make
acceptable proof of the juror's disability. The judgment was affirmed. In the present case, appellant's
counsel objected to continuing the trial with eleven jurors, but did not request a mistrial. The appellant did
not object to the trial court's finding that the juror's disability was based on hearsay. When there is no
objection to hearsay, it may be given probative value. Inadmissible hearsay admitted without objection
shall not be denied probative value merely because it is hearsay. Tex. R. Crim. Evid. 802; see Fernandez
v. State, 805 S.W.2d 451-58 (Tex. Crim. App. 1991); Edwards v. State, 813 S.W.2d 572, 578 (Tex.
App.--Dallas 1991, pet. ref'd).

 Appellant also argues that the trial court erred in failing to give appellant an opportunity to
choose between continuing with eleven jurors or seeking a mistrial. Cited in support of this argument are
Ex parte Hernandez, 906 S.W.2d 931 (Tex. Crim. App. 1995), and Carrillo v. State, 597 S.W.2d 769
(Tex. Crim. App. 1980). These decisions are inapposite because they were concerned not with disabled
jurors but with jurors who after commencing their service as jurors expressed a bias or prejudice which
they said would prevent them from being fair jurors. It is well established that a bias or prejudice in favor
of or against the defendant is not a disability within the meaning of Article 36.29(a). Ex parte Hernandez,
906 S.W.2d at 932; Carrillo, 597 S.W.2d at 771. These cases do not support appellant's argument here. 
The juror in this case was shown to be disabled, not biased or prejudiced.

 The trial court has the duty to determine whether a juror is disabled and except for an abuse
of discretion, the trial court's decision that a juror is disabled and to continue the trial with eleven jurors will
be upheld on appeal. Allen v. State, 867 S.W.2d 427, 429 (Tex. App.--Beaumont 1993, no pet.);
Freeman v. State, 838 S.W.2d 772, 774 (Tex. App.--Corpus Christi 1992, pet. ref'd). However, it has
been held that the statute limits the trial court's discretion in determining a juror's disability to physical
illness, mental condition, or emotional state that would hinder a juror from performing the duties of a juror. 
Landrum v. State, 788 S.W.2d 577, 578-79 (Tex. Crim. App. 1990); Carrillo, 597 S.W.2d at 771. 
In the circumstances of this case the trial court did not err in continuing the trial with eleven jurors. 
Appellant's third point of error is overruled.

 In his fourth point of error, appellant claims the trial court erred in failing to declare a mistrial
"when one of the attorneys for the State improperly communicated with the jury." Appellant relies on the
statute that provides: "No person shall be permitted to converse with a juror about the case on trial except
with the permission of the court." Tex. Code Crim. Proc. Ann. art. 36.22 (West 1981).

 After appellant's first witness testified, the trial court called for a recess and asked the
jurors to retire to the jury room. One of the prosecutors then went out into the hallway where he saw two
assistant district attorneys who were not involved with this case. The prosecutor commenced relating some
of the testimony in this case to his colleagues. He told them he was trying a robbery case in which some
fifty-five thousand dollars had been taken. He told them that a defense witness had just testified that
appellant, several months before the alleged robbery, had received a settlement in a civil lawsuit. The
prosecutor also discussed tracing the funds in appellant's bank accounts. As he was talking, the prosecutor
looked toward the pay telephones which were about fifteen feet away. He saw one of the jurors using a
telephone. The juror looked up and said, "Should you be saying this before me?" The prosecutor replied,
"No, I should not." The prosecutor immediately reported the incident to the trial court. Before the jury
returned and after appellant returned to the courtroom, evidence of the incident was placed in the record. 
The prosecutor stated that when he started talking to his colleagues he did not see the juror and that he had
no intent to communicate with her. The prosecutor acknowledged he had been indiscreet, but said he had
not said anything except what was already in evidence. He said he expressed no skepticism about the
witness's testimony and made no comment about appellant. The juror was not called to testify. After
hearing defense counsel's argument and a motion for a mistrial, the trial court asked "the State to be more
prudent in the future." The trial court stated that it would give specific instructions that the jury could only
receive evidence from witnesses, and that the court had no reason to believe the jurors would not follow
instructions, and that it presumed that the remarks the prosecutor made would be repeated during the
State's final argument. The trial court overruled appellant's request for a mistrial.

 The issue presented is whether the prosecutor conversed with the juror, which is prohibited
by the statute. "Converse" means to engage in conversation, to exchange thoughts and opinions in speech. 
Webster's Third International Dictionary, 498(Phillip B. Gove, ed. 1961). It has been held that a
statement to which there is no response does not constitute a conversation within the meaning of Article
36.22. Palasota v. State, 360 S.W.2d 137, 141 (Tex. Crim. App. 1970). The term "to converse with
a juror" as used in Article 36.22 means something more than ex parte statements. Pearson v. State, 165
S.W.2d 725, 730 (Tex. Crim. App. 1942); see Horst v. State, 758 S.W.2d 311, 314-15 (Tex.
App.--Amarillo 1988, pet. ref'd). When there is no reply to a statement, it is not "conversation with a
juror" that is forbidden by statute, and until misconduct is shown, no burden is imposed upon the State
which it must rebut. Patterson v. State, 293 S.W. 570, 571 (Tex. Crim. App. 1927). Moreover, when
a conversation between a juror and a witness does occur and it consists of information already in evidence
no harm is shown. Mayo v. State, 708 S.W.2d 854, 856 (Tex. Crim. App. 1986). We hold that the
prosecutor within the meaning of the statute did not converse with the juror and, in the circumstances
shown, the trial court did not err in refusing to grant a mistrial. Appellant's fourth point of error is
overruled.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Chief Justice Carroll, Justices Aboussie and Dally*

Affirmed

Filed: August 14, 1997

Do Not Publish






* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. See Tex.
Gov't Code Ann. § 74.003(b) (West 1988).



rt." Tex. Code Crim. Proc. Ann. art. 36.22 (West 1981).

 After appellant's first witness testified, the trial court called for a recess and asked the
jurors to retire to the jury room. One of the prosecutors then went out into the hallway where he saw two
assistant district attorneys who were not involved with this case. The prosecutor commenced relating some
of the testimony in this case to his colleagues. He told them he was trying a robbery case in which some
fifty-five thousand dollars had been taken. He told them that a defense witness had just testified that
appellant, several months before the alleged robbery, had received a settlement in a civil lawsuit. The
prosecutor also discussed tracing the funds in appellant's bank accounts. As he was talking, the prosecutor
looked toward the pay telephones which were about fifteen feet away. He saw one of the jurors using a
telephone. The juror looked up and said, "Should you be saying this before me?" The prosecutor replied,
"No, I should not." The prosecutor immediately reported the incident to the trial court. Before the jury
returned and after appellant returned to the courtroom, evidence of the incident was placed in the record. 
The prosecutor stated that when he started talking to his colleagues he did not see the juror and that he had
no intent to communicate with her. The prosecutor acknowledged he had been indiscreet, but said he had
not said anything except what was already in evidence. He said he expressed no skepticism about the
witness's testimony and made no comment about appellant. The juror was not called to testify. After
hearing defense counsel's argument and a motion for a mistrial, the trial court asked "the State to be more
prudent in the future." The trial court stated that it would give specific instructions that the jury could only
receive evidence from witnesses, and that the court had no reason to believe the jurors would not follow
instructions, and that it presumed that the remarks the prosecutor made would be repeated during the
State's final argument. The trial court overruled appellant's request for a mistrial.

 The issue presented is whether the prosecutor conversed with the juror, which is prohibited
by the statute. "Converse" means to engage in conversation, to exchange thoughts and opinions in speech. 
Webster's Third International Dictionary, 498(Phillip B. Gove, ed. 1961). It has been held that a
statement to which there is no response does not constitute a conversation within the meaning of Article
36.22. Palasota v. State, 360 S.W.2d 137, 141 (Tex. Crim. App. 1970). The term "to converse with
a juror" as used in Article 36.22 means something more than ex parte statements. Pearson v. State, 165
S.W.2d 725, 730 (Tex. Crim. App. 1942); see Horst v. State, 758 S.W.2d 311, 314-15 (Tex.
App.--Amarillo 1988, pet. ref'd). When there is no reply to a statement, it is not "conversation with a
juror" that is forbidden by statute, and until misconduct is shown, no burden is imposed upon the State
which it must rebut. Patterson v. State, 293 S.W. 570, 571 (Tex. Crim. App. 1927). Moreover, when
a conversation between a juror and a witness does occur and it consists of information already in evidence
no harm is shown.